## HUTCHINSON et al., Appellants, v. MISSOURI PACIFIC RAILWAY COMPANY.

` In Banc, March 26, 1901.*

1. **Negligence: RINGING BELL: PURPOSE.** The purpose of the statute requiring a bell of approaching trains to be rung, is to give notice, and in a personal injury case, if the party injured saw the train approaching, it is immaterial that the bell was not rung, for although an act of negligence, it could not have contributed to the injury.

2. ————: **ORDINANCE: MAXIMUM SPEED: NEGLIGENCE PER SE.** The running of a railroad train thirty-five miles per hour through a town whose ordinance forbids a higher rate than six miles per hour, is negligence *per se.* And being negligence *per se* the railroad company is liable for damages to a person who was injured by such train unless he himself contributed to the result by his own negligence.

3. ————: **MAXIMUM SPEED: SEEING APPROACHING TRAIN: MATTER FOR JURY.** Deceased went out on the platform with the view of boarding a train as a passenger, and there saw the headlight of an approaching train, and thought it was the train she was to board, and, preparatory to doing so, proceeded to cross two tracks, which all passengers for her train were required to do, and while hastily doing so dropped a scarf, which she stopped to pick up, but before she got off the track, was struck and killed by the approaching train, which proved not to be the one she intended to board, but a train on one of

NOTE.—Decided in Division One, November 12, 1900. Transferred to Banc, and divisional opinion there adopted January 25, 1901. Motion for rehearing filed; overruled March 26, 1901.

the tracks she was crossing, which came about the same time her train was due. *Held*, if she knew or could have discerned that said train was running at a rate of speed far in excess of that permitted by ordinance, and attempted to cross the tracks as she did, she was guilty of such negligence as would prevent a recovery; but whether or not, in the darkness of the night and under the circumstances surrounding her, she is to be regarded as having known that it was approaching at such speed, is a question for the jury, and is not a matter of law to be settled by the court. But in the absence of proof to the contrary, the law presumes that she trusted that the train was not being run at a rate in excess of the maximum rate permitted by law.

4. ———: ———: ———: ———: ABSENCE OF PROOF. The law presumes, in the absence of proof to the contrary, that one crossing a railroad track within an incorporated town, acted upon the assumption that an approaching train was not being run in excess of the maximum rate permitted by ordinance; and in such case the court has no right to assume, as a matter of law, that his conduct is not such as might be reasonably expected of a reasonably prudent person.

Appeal from St. Charles Circuit Court.—*Hon. E. M. Hughes,* Judge.

REVERSED AND REMANDED.

*A. R. Taylor* for appellants.

(1) The evidence clearly showed that plaintiff's mother was in the situation of a passenger, entitled to the same degree of care from the defendant as if she was actually upon the train. She had bought her ticket and was on her way to the platform about the time that the train she was to take was due, when another train of defendant, running at an excessive and prohibited rate of speed, ran against and killed her. Railroad v. Anderson, 72 Md. 527. (2) The negligence of the defendant in running its train past a passenger station at a high rate of speed at the time that the passenger accommodation

train was due, was in itself gross negligence.    Terry v. Jewell, 84 N. Y. 338; Brassfield v. Railroad, 84 N. Y. 241; Jewell v. Railroad, 4 American N. Y. Rep. 541.    A failure by the deceased to watch for a train while passing over to the platform, if it be true that she did so fail, can not be declared negligence as a matter of law.    Railroad v. Anderson, 72 Md. 530; Mayo v. Railroad, 104 Mass. 142; Sonier v. Railroad, 141 Mass. 14.    It is true that the evidence showed that deceased, when she left the station room, on the north side of the tracks, saw the headlight of the train at Ellendale, a half mile away; but she supposed, and had every reason to suppose, that it was the accommodation train for which she held a ticket, entitling her to ride as a passenger upon.    It was the time of the accommodation train.    It was due there at the time. The deceased acted upon this assurance, as did the other passengers there in waiting.    She had no reason to expect another train to run by the depot, and certainly not at such speed, upon the time of the accommodation train.    (3)    We do not know whether the decisions of this court in Sanders v. Railroad, 147 Mo. 411, and Byington v. Railroad, 147 Mo. 673, holding that the ordinances of the city of St. Louis, limiting speed in the limits of the city and requiring the bell to be rung, when violated, can not be invoked as evidence of negligence, unless the railroad has agreed to obey the law, is to apply to steam railroads as well as street railroads.    Of course, there was no agreement by the railroad to obey these ordinance provisions, and it would scarcely be expected that it would voluntarily assume the duty and responsibilities arising therefrom.    We believe there is no recorded incident of a railroad so doing. Yet all the courts of the United States, Federal and State, have held that a violation of an ordinance regulating the speed was evidence of negligence—some courts holding that such violation was evidence of negligence—the greater number,

including those of Missouri, holding, up to the time of the Fath case, 105 Mo. 537, that the violation of the ordinance is negligence *per se,* which is the correct rule. Beginning with: Karle v. Railroad, 55 Mo. 483; Bowman v. Railroad, 85 Mo.; Eswin v. Railroad, 96 Mo. 290; Schlereth v. Railroad, 96 Mo. 509; Hanlon v. Railroad, 104 Mo. 381; Merz v. Railroad, 88 Mo. 672; Rafferty v. Railroad, 91 Mo. 33; Grube v. Railroad, 98 Mo. 330; Easly v. Railroad, 113 Mo. 236; Gratiot v. Railroad, 116 Mo. 450; Prewett v. Railroad, 134 Mo. 625. So that, if any question of law could be said to have been settled by decision, it was settled in this State that a violation of an ordinance of a city empowered to pass it was negligence *per se.*
(4) There was no evidence of negligence on the part of deceased, certainly no conclusive evidence of negligence such as the court could declare as a matter of law. A party can not be convicted of negligence for not anticipating the negligence of another. If the ordinance was valid, deceased had a right to rely upon its obedience by the defendant. Petty v. Railroad, 88 Mo. 306; Eswin v. Railroad, 96 Mo. 290; Crumpley v. Railroad, 111 Mo. 152; Jennings v. Railroad 112 Mo. 268; Sullivan v. Railroad, 117 Mo. 214; Gratiot v. Railroad, 116 Mo. 450; Brannock v. Elmore, 114 Mo. 55.

*Martin L. Clardy* for respondent.

(1) There is no ground for the assumption that a person about to cross a track to take a train is relieved from the duty to use his senses vigilantly to avoid danger. Boyd v. Railroad, 105 Mo. 371; Kreis v. Railroad, 148 Mo. 321. (2) The argument is made that, if the train had not run at a rate of speed in excess of the ordinance limit, the collision would not have occurred. The better authority is that a person who sees a train coming, especially when it is near at hand, can not

rely upon the persons in charge of it observing a requirement of law prescribing a given rate of speed. Sullivan v. Railroad, 117 Mo. 214; Weller v. Railroad, 120 Mo. 635. (3) But the ordinance is not effective to create a civil liability on the part of one citizen to another. "A city can not, under the guise of the exercise of its police powers, create liability from one citizen to another or create a civil duty enforcible at common law." Sanders v. Railroad, 147 Mo. 411; Byington v. Railroad, 147 Mo. 673; Murphy v. Railroad, 105 Mo. 252; Fath v. Railroad, 105 Mo. 337; Senn v. Railroad, 108 Mo. 142; Holwerson v. Railroad, 57 S. W. 770. "The legislative power, subject to the limitations herein contained, shall be vested in a Senate and House of Representatives to be styled the General Assembly of the State of Missouri," says the Constitution, section 1, article 4. Opinion of Sup. Ct. Judges on Township Organization Law, 55 Mo. 295; State ex rel. v. Wilcox, 45 Mo. 458; Bartow v. Himrod, 4 Seld. 483; State v. Field, 17 Mo. 529; Cooley's Constitutional Limitations, pp. 260, 261.

## In Division One.

VALLIANT, J.—This is a suit for damages for the killing of plaintiffs' mother, which they allege was caused by the negligence of defendant. The plaintiffs are minors, suing by their next friend; their mother was a widow.

The allegations of the petition are, that the plaintiffs' mother, on January 3, 1892, was struck and instantly killed by an engine drawing a passenger train within the limits of the city of St. Louis, while she was in the act of crossnig the track at a passenger station, with a view of reaching a platform provided by defendant for that purpose, from which she intended taking passage on a train of defendant. The acts of

negligence charged are, that the defendant ran its engine and cars without ringing the bell for the crossing as the statute requires, and ran the train at the speed of thirty miles an hour within the city, in violation of an ordinance of the city, which provided that it was unlawful to run it at a higher rate than six miles an hour. The prayer of the petition is for judgment for $5,000.

The answer admits that the ordinance was in force at the time of the accident, but avers that it was repealed in 1893, denies all other allegations, and sets up a plea of contributory negligence, which is denied by the reply.

The evidence for plaintiff tended to show the following:

Benton, where the accident occurred, is a station on defendant's road in the western part of the city. Defendant has a station house there on the north side of its tracks, for the accommodation of its passengers; it has double tracks, the north track for the west-bound and the south for the east-bound trains. There was a platform on each side of the tracks, that on the south side being designed for passengers taking the east-bound trains. To go from the station house to the south platform one would cross both tracks. On January 3, 1892, Mrs. Hutchinson, the plaintiffs' mother, came to this station with the purpose of taking the accommodation train, as it was called, going east, which train was due there at 6:38 p. m. The exact time of her arrival at the station is not established, but is appoximately given. It was stated that she had left the house of her daughter to go to the station about six o'clock, and the distance was about a half mile. A witness, Mr. Banghart, who was in the station with her, estimated it to be about 6:20 p. m., when they heard the whistle and she and he went out of the station together to cross over to the south platform. Another witness thought it was within three or five minutes of the time for the accommodation train. Ellendale is a

station a half mile to the west.   A train at Ellendale coming east could be clearly seen from the platform in front of the station on the north side of the tracks at Benton, and from the north track and from the space between the tracks; but from the platform on the south side it could not be seen for more than three hundred or five hundred feet, owing to an embankment and pile of ties obstructing the view.  Mrs. Hutchinson was in the habit of visiting her daughter and had frequently taken the train from that station, but usually went in on an earlier train.   The night of the accident was cold and dark.   Mrs. Hutchinson and Mr. Banghart were in the station house, where there was a light and fire, awaiting the accommodation train.   She had a ticket to the Union Station. They heard a whistle in the direction of Ellendale, when Mrs. Hutchinson said, "That is our train, we will have to be in a hurry," and she and Banghart immediately arose and went out on the platform in front of the station, where they stopped and looked west.   The headlight of the train coming from Elendale was plainly visible.   She said, "This is our train, we better be in a hurry to get across."   They both started to go across the tracks, Mrs. Hutchinson a little ahead, but Mr. Banghart passed her; when she reached the middle of the south track she dropped a lace scarf she was carrying in her hand, and paused and stooped to pick it up; she caught it, but while she was rising and before she had attained an erect position the engine of the approaching train, which proved to be the mail train running at the speed of thirty-five miles an hour, struck her and killed her instantly.   Banghart barely reached the platform in safety.   The train stopped about a hundred yards from the point of the accident in consequence of it. That station was not a stopping point for that train and but for the accident it would not have stopped there at all.   The witnesses all testified that they heard no bell, but they all

heard the whistle at Ellendale, and saw the headlight.   At the close of the plaintiff's evidence the court gave an instruction to the effect that the plaintiffs were not entitled to recover, whereupon they took a nonsuit with leave, and after an ineffectual motion to set it aside, have brought the cause here for review.

I.   The fact, if it be a fact, that the engine bell was not rung as the statute requires, is immaterial under the other facts of the case.   The object of ringing the bell is to give notice of the approach of the train; but in this instance that was unnecessary, because Mrs. Hutchinson heard and recognized the whistle and saw the headlight; she knew the train was coming, and required no further warning.   The failure to ring the bell, though an act of negligence, could not have contributed to the catastrophe.

II.   But the city ordinance forbade the running of the train at a higher rate than six miles an hour, and this train was running at the rate of thirty-five miles an hour.

That act was negligence *per se,* and if it was the cause of the accident, the defendant was liable unless the deceased contributed to the result by her own negligence.   This proposition has been so often and so elaborately discussed and demonstrated and as a rule of law so often declared by this court that it is now only necessary to restate it and cite some of the decisions in which it is discussed.   [Karle v. Railroad, 55 Mo. 476; Bowman v. Railroad, 85 Mo. 533; Merz v. Railroad, 88 Mo. 672; Keim v. Railroad, 90 Mo. 314; Rafferty v. Railroad, 91 Mo. 33; Eswin v. Railroad, 96 Mo. 290; Schlereth v. Railroad, 96 Mo. 509; Grube v. Railroad, 98 Mo. 336; Kellny v. Railroad, 101 Mo. 68; Murray v. Railroad, 101 Mo. 236; Hanlon v. Railroad, 104 Mo. 381; Bluedorn v. Railroad, 108 Mo. 439; Gratiot v. Railroad, 116 Mo. 450; Prewitt v. Railroad, 134 Mo. 615.]

When the plaintiffs' mother heard the whistle in the direction of Ellendale and went out on the platform and there saw the headlight of the approaching train, if she knew or could discern the rate of speed at which it was approaching and had attempted to cross the tracks as she did, she would have been guilty of such negligence as would prevent a recovery. Whether, in the darkness of the night and under the circumstances surrounding her, she is to be regarded as knowing or capable of discerning the speed at which the train was coming, is a question of fact upon which minds might reasonably differ and the court could not settle it as a matter of law. And as it is a fact of common experience that railway trains, as they lawfully may, not infrequently do run past some passenger stations without stopping and at a rate of thirty-five or forty miles an hour, if the plaintiffs' mother, without knowing and without being able to discern the speed of the train, had assumed that it was running at a less rate and acting on that assumption, had attempted to cross as she did, the court would have been justified in adjudging her negligent, unless there was some other fact in the case to justify her assumption. But there was that other fact in this case. The city ordinance prohibited the train running at a higher rate than six miles an hour, and in the absence of proof that she knew or had reason to apprehend to the contrary, the law will presume that she trusted as she had a right to trust, that the defendant was running its train at not more than six miles an hour in obedience to the ordinance, and that she regulated her movements accordingly. This court has frequently so declared the law. [Eswin v. Railroad, 96 Mo. 290, loc. cit. 295; Kellny v. Railroad, 101 Mo. 67, loc. cit. 77; Jennings v. Railroad, 112 Mo. 268, loc. cit. 276; Gratiot v. Railroad, 116 Mo. 450, loc. cit. 464; Sullivan v. Railroad, 117 Mo. 214, loc. cit. 222.]

Even with the train running as it was at thirty-five or forty miles an hour, the movements of the plaintiffs' mother were such that she had reached the middle of the south track and had almost reached the platform, as Banghart who started across with her in fact had done, when the engine struck her. It is, therefore, entirely reasonable to conclude that if the train had approached at the rate of only six miles per hour she would have passed in safety, even though she paused to pick up the scarf which had dropped. If, then, she was acting, as the law, in the absence of any proof to the contrary, will presume she rightfully was, on the assumption that the train was approaching at the rate of not more than six miles an hour, the court had no right to conclude, as a matter of law, that her conduct was not such as might be expected of a reasonably prudent person. The question of whether, under those conditions, she was guilty of negligence was one of fact for the jury. The instruction in the nature of a demurrer to the evidence ought not to have been given.

The judgment is reversed and the cause remanded to the trial court to be re-tried in accordance with the law as herein declared.

All concur, except *Marshall, J.*, who dissents.

## In Banc.

PER CURIAM:—The foregoing opinion filed by Judge VALLIANT in this cause, while it was pending in Division No. 1, of the court, is approved and adopted as the opinion of the Court in Banc, by the majority of our number. *Burgess, C. J., Brace* and *Gantt, JJ.*, concurring in said opinion. *Robinson, Sherwood* and *Marshall, JJ.*, dissenting.

ON MOTION FOR REHEARING.

VALLIANT, J.—The motion for rehearing proceeds upon a misconception by the learned counsel of the opinion delivered. There is nothing in that opinion to indicate "that notwithstanding the deceased saw or might have seen, the train within a few feet of her when she went upon the track, she had the right to presume that she could cross in safety, and when the engine was almost on her she had the right still to indulge the presumption that she could do so and stoop to recover a scarf she had dropped." Nor does the opinion hold "that the prior and concurring negligence of the company in running its train at a prohibited rate of speed relieves deceased's representatives from the consequences of that act," nor "that the evidence of her negligence ought to be disregarded for the reason that she could not be negligent because she had a right to assume that the persons in charge of the train would observe the ordinance limiting its speed to six miles an hour."

The opinion says: "That act [running the train in violation of the ordinance] was negligence *per se* and if it was the cause of the accident, the defendant was liable unless the deceased contributed to the result by her own negligence." It holds that in considering the question of her negligence the ordinance was a fact to be taken into account, and that that raised a question of fact. But there is no intimation in the opinion that that presumption, that she relied on the ordinance, is to be taken as conclusive. The language of the opinion is: "The city ordinance prohibited the train running at a higher rate than six miles an hour, and in the absence of proof that she knew or had reason to apprehend to the contrary the law will presume that she trusted, as she had a right to trust, that the defendant was running its train at not more than six miles an hour in obedience to the ordinance, and that she regulated

her movements accordingly." That leaves the defendant entirely free to show if it is a fact, that the circumstances and conditions were such as that, notwithstanding the ordinance, she had reason to apprehend that the train was running at a higher rate than that prescribed. This defendant has met that issue frequently and knows how to handle it.

Nor is there anything in the record to justify the assumption that Mrs. Hutchinson stopped within fifty or eighty feet of the engine to pick up her scarf. The facts clearly shown are that she was sitting in the station at night, waiting for a train; she heard a whistle, and said, "That is our train, we must be in a hurry." She went out on the platform and saw the headlight of the approaching train which was then at Ellendale and clearly visible, although it was half a mile away, it was a dark night, and whether she could in fact see how fast the train was coming was a question. But the opinion says, if there was nothing in the case to justify her in thinking that the train was running at a slow rate, she was chargeable with knowledge that the train might lawfully run by the station at forty miles or more an hour and if she ventured upon the track she did so at her peril. But the fact of the ordinance was a fact that might enter into her calculation, unless she had reason to apprehend the train was running in violation of the ordinance, and that that made a question for the jury. If the train was running in submission to the ordinance, it would have taken it just five minutes to have covered the distance from Ellendale to the point of the accident, but at forty miles an hour the distance was made in less than one minute. The motion for rehearing is overruled. *Burgess, C. J.,* and *Brace* and *Gantt, JJ.,* who concurred in the original opinion, concur in the above.