# RISKA v. UNION DEPOT RAILROAD COMPANY, Appellant.

### Division Two, March 1, 1904.

1. **NEGLIGENCE: Crossing Track: Negligent Speed of Car: Contributory Negligence.** Plaintiff's husband was struck by a street car and killed as he was in the act of crossing the track. The evidence showed that the car could have been seen by him at least a block away if he had looked, and that he could have heard it if he had listened, but it does not show that he either looked or listened, or that he did not, but it did show that on a dark rainy night, with an umbrella over his head, he walked upon the track only six feet in front of a car approaching at a rate of speed prohibited by law. *Held*, that the plaintiff was

entitled to recover unless the preponderance of the evidence showed that her husband was guilty of negligence which contributed to his injury in failing to look and listen for the car before he entered upon the track. *Held*, also, in the absence of evidence that he did not look or listen it must be presumed that he was in the exercise of due care, and looked and listened, but indulged the presumption, which he had a right to do, that the car was not moving at a greater rate· of speed than that prescribed by ordinance, and that he could cross the track in safety.

2. ———: ———: **Pedestrian: Care: Presumption.** In the absence of some evidence that a pedestrian in crossing a track in front of a street car did not use due care for his own safety, the presumption is that he did use due care—in this case, that he looked for the approaching car and saw it.

3. ———: ———: ———: ———: ———: **Umbrella.** The fact that the pedestrian had an umbrella over his head and that he was not seen to raise it or lower it, does not show that he did not look for the approaching car before attempting to cross the track.

4. ·———: ———: ———: **Speed of Car: Presumption.** A pedestrian about to cross a railway track on a public street has a right to presume that those in charge of an approaching car will discharge their duty and obey the laws and ordinances regulating the speed and management of cars.

5. ———: ———: ———: ———: **Presumption Upon a Presumption.** The fact that a pedestrian in crossing a railway track has the right to assume that the street car is not being run in excess of the maximum rate permitted by ordinance is not a presumption founded on the further presumption that he was at the time in the exercise of due care. Those presumptions were in reference to entirely different matters.

6. ———: ———: **Stopping Car.** An instruction that it was the duty of those in charge of the car to stop it after they knew, or could have known, the perilous position of a pedestrian, may be given, although there is no positive direct testimony that the operator saw or could have seen his peril in time to have stopped the car, if the evidence clearly goes to show that he might have done so had he been running the car at a lawful rate of speed.

7. ———: ———: ———: **No Request for Verdict.** And even though such an instruction is not authorized by the pleadings (which is not conceded in this case) a judgment against the company should not be reversed if no verdict for plaintiff is authorized by that instruction, but the verdict is based on the

fact that the ordinance regulated the speed of cars, and that the car in question was admittedly being run in violation of that ordinance.

8. ————: Ordinance: Acceptance by Company. Ordinances regulating the speed of cars, and requiring operators in charge thereof to vigilantly watch for pedestrians about to cross the track, are binding on street car companies whether accepted by them or not. Such an ordinance is a police regulation, conferring a right of action upon a person injured in consequence of a violation of it, without any allegation or proof that it had been accepted by the street car company.

Appeal from St. Louis City Circuit Court.—*Hon. Jacob Klein*, Judge.

AFFIRMED.

*Boyle, Priest & Lehmann, Lon O. Hocker, Geo. W. Easley* and *E. S. Robert* for appellant.

(1) The demurrer to the evidence should have been sustained. The evidence for plaintiff disclosed that the car could have been seen by the deceased at least a block away, if he had looked. It could have been heard if he had listened. He neither looked nor listened, but on a dark, rainy night, with an umbrella over his head, walked upon the track, only six feet in front of a moving car, without looking to see whether the car was approaching or not, or giving any heed to his surroundings. This was such contributory negligence as precludes a recovery. Hogan v. Railroad, 150 Mo. 55; Schmitt v. Railroad, 149 Mo. 287; Vogg v. Railroad, 138 Mo. 172; McMannee v. Railroad, 135 Mo. 440; Huggart v. Railroad, 134 Mo. 673; Lane v. Railroad, 132 Mo. 27; Baker v. Railroad, 122 Mo. 543; Bunyan v. Railroad, 127 Mo. 19; Weller v. Railroad, 120 Mo. 648; Maxey v. Railroad, 113 Mo. 10; Boyd v. Railroad, 105 Mo. 381; Hudson v. Railroad, 101 Mo. 30; Moore v. Railroad, 126 Mo. 273; Zimmerman v. Railroad, 71 Mo. 486; Maher v. Railroad, 64 Mo. 267; Fletcher v. Railroad, 64 Mo. 484;

Harlan v. Railroad, 65 Mo. 22; Moody v. Railroad, 68 Mo. 470; Bell v. Railroad, 72 Mo. 50; Purl v. Railroad, 72 Mo. 168; Adams v. Railroad, 74 Mo. 553; Kelly v. Railroad, 75 Mo. 140. (2) The entire series of instructions given by the court upon its own motion, as well as upon the motion of the plaintiff, has one common vice. Not one of them requires the jury to find that any one or more of the negligent acts charged caused the injury and death for which the action was brought. Stanley v. Railroad, 114 Mo. 624; Murphy v. Railroad, 54 S. W. 445. Instruction 2 given by the court upon its own motion is erroneous in the following particulars: a. It presents an issue not made by the pleadings—that of negligence after those in charge of the train discovered, or should have discovered, the danger of deceased. There was no evidence that the car could have been stopped after its operator knew, or ought to have known, that the deceased was going on the track. Bunyan v. Railroad, 127 Mo. 19; Waldhier v. Railroad, 71 Mo. 514; Holwerson v. Railroad, 57 S. W. 770. b. The instruction is based on the degree of care required by the ordinances read in evidence. No proof was offered that the defendant was in any manner bound by such ordinances, and they can not rule the case. Fath v. Railroad, 105 Mo. 537; Moran v. Pullman Co., 134 Mo. 650; Sanders v. Railroad, 147 Mo. 411; Murphy v. Railroad, 54 S. W. 442; Holwerson v. Railroad, 57 S. W. 770. The third and fifth instructions given by the court on its own motion are bad for the same reasons. c. It ignores the fact of the simultaneous and concurring negligence of deceased with the alleged negligence of the defendant. The rule of this instruction can have no application to a case where the negligence of each of the parties continues up to and combines as the efficient cause of the injury. Zimmerman v. Railroad, 71 Mo. 484; Nelson v. Railroad, 68 Mo. 597; Price v. Railroad, 72 Mo. 414; Murphy v. Dean, 101 Mass. 466; Murphy v. Railroad, 54 S. W. 442; Watson v. Railroad, 133 Mo.

250; Holwerson v. Railroad, 57 S. W. 770. d. Even had the pleadings and proof justified this instruction, it is erroneous for want of the important qualification that the deceased could not, after he became or ought to have become, aware of defendant's negligence, by care on his part have avoided the injury. Beach on Contributory Negligence, sec. 56; Cooley on Torts (2 Ed.), 813; Bailey's Master's Liability, 446; 7 Am. and Eng. Ency. of Law (2 Ed.), 386; Watson v. Railroad, 133 Mo. 250; Holwerson v. Railroad, 57 S. W. 770.

*A. R. Taylor* for respondent.

(1) The deceased being lawfully on the street, in approaching and passing over the track, had the right to rely upon the defendant's servants obeying the law as to the speed of the car, and to regulate his action and movement accordingly. That is to say, he had a right to attempt to cross the track if, when he saw the car, it was such a distance from the crossing that he would be safe in crossing if the car was not running exceeding the lawful rate of speed. And under such a state of facts he was not negligent in thus undertaking to cross the track. The evidence tended most strongly to prove that the car was, in fact, running from twenty to thirty miles an hour, and that deceased's reliance upon the law being obeyed by the railroad caused his death. The lawful rate of speed was ten miles an hour. The deceased, seeing the car such a distance away as not to imperil his passage, goes on across in the assurance that the car would not come faster than the lawful rate, is caught on the track and killed by the excessive speed. All the evidence tends to prove that this is the true solution of the killing. And if so, there was no contributory negligence of the deceased, and there was inexcusable negligence upon the part of the railroad. The decisions of this court have about settled this case upon this proposition. There is no longer doubt upon this point if

there was ever room for doubt. This court in a very recent case states the law as follows: "Deceased had the right to presume that the defendant would obey the ordinance of the city regulating the speed of railroad trains and requiring to be placed on every moving train after sunset one large lamp, headlight or lantern conspicuously placed in front of the train facing the direction in which the train was moving, and requiring the bell to be rung on the engine on all such trains eighty rods from the crossing, and to be kept ringing until the train (engine) passed the crossing." Weller v. Railroad, 164 Mo. 199; Petty v. Railroad, 88 Mo. 306; Crumpley v. Railroad, 111 Mo. 152; Jennings v. Railroad, 112 Mo. 490; Sullivan v. Railroad, 117 Mo. 214. This declaration of the law of the relation of the railroad to the public is axiomatic. The law was made to be obeyed. The railroad was in duty bound to obey the law. Every citizen in his relations with the railroad has a right to expect the railroad will obey the law, and to regulate his action upon that assurance until he has reason to know that the railroad is not obeying the law, and the law will not condemn his action if he fails to anticipate the unlawful act of the railroad. The same principle is declared in the recent case of Hutchinson v. Railroad, 161 Mo. 257. (2) The law presumes that the deceased was in the exercise of ordinary care as he approached and went upon the track; that he looked and listened, and seeing the car a safe distance from the crossing, and relying on obedience by the railroad to the ordinance that the car would not come faster than ten miles per hour, proceeded in this assurance to cross the track. The deceased was entirely justified in such action. Buesching v. Gaslight Co., 73 Mo. 219; Petty v. Railroad, 88 Mo. 306; Crumpley v. Railroad, 111 Mo. 152; Schlereth v. Railroad, 115 Mo. 87; Meadow v. Ins. Co., 129 Mo. 76; Bluedorn v. Railroad, 108 Mo. 439. There was no evidence that deceased did not see the car at a distance such as to enable him to cross in safety

if the car was running at the lawful rate. This court states the law in these words: "And when these presumptions, together with the presumption that the deceased was at the time of the accident in the exercise of due care, are indulged, the plaintiff was entitled to recover, unless it conclusively appeared from the evidence adduced by plaintiff either by the direct or cross-examination of her own witnesses, that her husband was guilty of negligence contributing to his own injury (Stone v. Hunt, 94 Mo. 475; Buesching v. Gas Co., supra; Warren v. St. Louis Merchants Exchange, 52 Mo. App. 157), and in order to overcome the presumption, and to defeat plaintiff's action, it devolved upon the defendant to show, by the weight of the evidence, a failure on the part of the deceased to exercise ordinary care to avoid the injury, and that his failure to exercise such care was its proximate cause, and so direct and immediate that but for the want of such ordinary care the injury would not have occurred." Weller v. Railroad, 164 Mo. 199. (3) The third point in appellant's brief is untenable if the ordinance requiring a vigilant watch and the stopping of the car within the shortest time and space possible was admissible. The motorman testified that he could see "the whole width of the street" before him as he ran up to point of collision. That he did not see deceased until he was between the two tracks. His admission shows that he could have seen deceased when he left the sidewalk. He stopped his car within about thirty-five feet. This was the best kind of evidence that he could stop his car within that space. He did do it. Then, seeing the deceased walking from the sidewalk (if he looked, as the ordinance required him to look), why didn't he stop—or slow up—or do something to save life? The evidence was ample to support this instruction. As to the admissibility of the ordinances pleaded, as we understand the recent decisions of the Supreme Court of Missouri, the cases cited and relied on by appellant do not state the law

upon the question.   The case of Jackson v. Railroad,
157 Mo. 636, distinctly overthrew the doctrine of the
Fath case, and those following it as authority, and re-
turned to the doctrine universally held throughout the
United States, that a violation of an ordinance of a city,
designed to protect life and limb, is negligence, and
admissible in evidence to support an action by the in-
jured party against the wrongdoer, without any accept-
ance of such ordinance, or agreement by the wrongdoer
to obey the law.   A municipal government has the in-
herent power to pass such laws as police regulations.
The holding of the above case has been followed in the
cases of Hutchinson v. Railroad, 161 Mo. 253; Weller
v. Railroad, 164 Mo. 205.

*Boyle, Priest & Lehmann* and *Geo. W. Easley* for
appellant on motion for rehearing.

(1)   The court, in the opinion filed, erred in hold-
ing that "the evidence did not show whether deceased
did or did not look or listen for an approaching car
before attempting to cross the track."   (a)   Such hold-
ing is in conflict with the evidence of the plaintiff's wit-
ness, William Hahn.   Is not the statement of Mr. Hahn,
who, desiring to cross the track, prudently waited at the
curb, only twelve feet from the track, looking at both
car and man, that he did not see the man with his um-
brella  raise his umbrella, change his gait or stop, look
to the right or left, of itself sufficient to overcome any
bare presumption that he did not look or listen for the
approaching car?   (b)   Such holding is in conflict with
the physical facts of the case.   The plaintiff's witness,
Rassieur, testified that, from the opposite side of the
street from which deceased started to cross, witness saw
the car, "when it was leaving or close to and north of
Lafayette avenue."   "I noticed it for about a block
and a half below."   "The eyesight of the deceased was
good."   The plaintiff's witness, Rassieur, says there

was a headlight on the car, and, further, "I think it was a bright headlight." With these facts proven by plaintiff, to assume that there was no evidence as to whether the man who was injured by such a moving car, looked or not, without any showing being made of any obstruction to his view of the car, is not only in conflict with the physical facts, but also in conflict with the following well-considered decisions: Hook v. Railroad, 162 Mo. 581; Beach, Con. Neg. (2 Ed.), sec. 182; Kelsey v. Railroad, 129 Mo. 374; Myers v. Railroad, 24 Atl. 747. The doctrine of the law in this State is that the courts will disregard evidence that conflicts with the physical facts of the case, and will not submit questions so raised to a jury, but will disregard them entirely. Hook v. Railroad, 162 Mo. 581; Kelsey v. Railroad, 129 Mo. 362; Hayden v. Railroad, 124 Mo. 573; Payne v. Railroad, 136 Mo. 575; Baker v. Railroad, 122 Mo. 589; Gurley v. Railroad, 104 Mo. 233; Hickman v. Railroad, 47 Mo. App. 73; Weaver v. Railroad, 60 Mo. App. 210; Lien v. Railroad, 79 Mo. App. 480; Railroad v. Smith, 86 Fed. 296; Railroad v. Pounds, 82 Fed. 217. (2) The court erred in holding that there was a presumption of due care on the part of the deceased, and in founding on that presumption the further presumption that deceased saw the approaching car for the following reasons: Because presumptions are only indulged in the absence of evidence, and are never resorted to when the evidence, and such reasonble inferences as may be drawn therefrom, disclose the facts. Yarnell v. Railroad, 113 Mo. 580. "The fact from which the presumption is made must have been proved." State v. Lackland, 136 Mo. 33. The law has established the rule of the presumption of ordinary care, because of the promptings of human nature for self-preservation. But such presumptions are never indulged except "in the absence of direct evidence or rebutting circumstances." Weller v. Railroad, 164 Mo. 198. In the case at bar, the direct evidence set out in this motion, and, indeed, conceded

in the opinion filed, rebuts the presumption of due care on the part of the deceased. If that direct evidence of the plaintiff's witness Hahn is not sufficient to overcome that presumption, then the ''rebutting circumstances'' found in the record do not repel a presumption of due care. The rebutting circumstances are: 1, the good eyesight of deceased; 2, the fact that the car could have been seen more than a block away; 3, that the defendant went upon the track when the car was only five or six feet distant from him. It is only ''when there is no witness to the actual occurrence'' that a presumption of care is proper. Petty v. Railroad, 88 Mo. 320. The presumption was indulged in one case because ''the record is silent as to his conduct as he approached and went on the crossing.'' Crumpley v. Railroad, 111 Mo. 158. (3) It being conceded by this opinion, and abundantly established by the evidence, that the approaching car was plainly visible to one looking for it in time to escape, ''it will be presumed in case of collision that he did not look, or, looking, did not heed what he saw.'' Wharton on Neg., sec. 382; Beach on Con. Neg. (2 Ed.), sec. 182; Artz v. Railroad, 34 Ia. 160; Payne v. Railroad, 136 Mo. 581. (4) The court erred in holding that the deceased saw the car, but indulged the presumption, ''as he had a right to do, that the car was not moving at a greater rate of speed than that prescribed by the ordinance; that he could cross the track in safety.'' We maintain that the correct rule is that a person approaching, for the purpose of crossing a street car track, must ''use reasonable care to ascertain if there be danger. If he use such reasonable precaution for his own safety as the law of common prudence enjoins, he has the right, in the absence of information to the contrary, in determining whether the way is open and safe, to rely upon the presumption that the corporation will perform its duty and observe the precautions imposed upon it.''. Weller v. Railroad, 120

Mo. 653; Lynch v. Railroad, 112 Mo. 436. Can it be fairly said on this state of facts that the deceased was using ordinary or reasonable care to ascertain if there was danger in attempting to cross the track at that time and place? Sullivan v. Railroad, 117 Mo. 222; Kellny v. Railroad, 101 Mo. 77; Lynch v. Railroad, 112 Mo. 434; Brannock v. Elmore, 114 Mo. 65. Can the court properly presume that he saw the car, without also presuming that he knew, or had reason to know, that it was unsafe to attempt to cross in front of it? Roddy v. Railroad, 104 Mo. 250. Such presumption may be indulged sometimes "where there is no witness to the actual occurrence." Scheen v. Railroad, 107 Pa. St. 8; Schlereth v. Railroad, 115 Mo. 101; Buesching v. St. Louis Gaslight Co., 73 Mo. 219; Petty v. Railroad, 88 Mo. 306; Weller v. Railroad, 164 Mo. 180; Crumpley v. Railroad, 111 Mo. 156; Jennings v. Railroad, 112 Mo. 268; Sullivan v. Railroad, 117 Mo. 244; Hutchinson v. Railroad, 161 Mo. 257. (5) The holding of the court in regard to the second instruction given by the court on its own motion is in conflict with the controlling decisions. The introductory part, charging negligence generally, is modified by the specific negligence charged in the petition. The plaintiff must be bound by and confined to the specific negligence alleged. Feary v. Railroad, 162 Mo. 96; Bartley v. Railroad, 148 Mo. 139; Chitty v. Railroad, 148 Mo. 75; McCarty v. Hotel Co., 144 Mo. 402; Huston v. Taylor, 140 Mo. 263; Dlauhi v. Railroad, 139 Mo. 294. (6) The holding of the opinion in regard to the acceptance of the ordinance commonly known as the "vigilant watch ordinance" is in direct conflict with the following controlling decisions of the Supreme Court of Missouri, viz.: Fath v. Railroad, 105 Mo. 537; Moran v. Car Co., 134 Mo. 641; Saunders v. Railroad, 147 Mo. 411; Murphy v. Railroad, 153 Mo. 253; Holwerson v. Railroad, 157 Mo. 245; Anderson v. Railroad, 161 Mo. 411.

BURGESS, J.—On February 3, 1903, an opinion was handed down in this case affirming the judgment of the court below.   Thereafter, in due time, defendant filed motion for rehearing, which was sustained, and the case again fully argued by counsel in the case.   We have again gone carefully over the record and considered with much care all the questions raised upon this appeal, including the points urged upon our attention by defendant in the motion for rehearing.

This is an action by plaintiff, the widow of Mathias Riska, deceased, to recover from defendant five thousand dollars damages for the negligent killing of her husband, Mathias Riska, at the intersection of Ninth and Carroll streets, in the city of St. Louis, on the evening of October 21, 1892.

The petition, after alleging that plaintiff and deceased were husband and wife, the incorporation of defendant and its operation of a line of street railway in the city of St. Louis, alleged:

That on the 21st day of October, 1892, between ten and eleven o'clock p. m., Mathias Riska was lawfully passing over the crossing at Ninth and Carroll streets, when defendant's servants in charge of a car moving north on Ninth street so negligently and carelessly ran, controlled and managed it as to cause it to run upon and over Mathias Riska and injure him, from which injuries he died.   That the car was run at a great and dangerous rate of speed, and without warning or signal by bell or otherwise of its approach.

That an ordinance then in force provided that the car should not be run at a greater speed than ten miles an hour, and that the car was run at a greater rate of speed than specified in said ordinance.

That there was in force in the city of St. Louis an ordinance  which required defendant's motorman and conductor to keep a vigilant watch for persons on foot either on or approaching the track, and upon the first

appearance of danger to stop the car within the shortest time and space possible, and that such duties were neglected.

The answer was a general denial, except as to the defendant's incorporation, which was admitted, and also contained a plea of contributory negligence, in that the deceased directly contributed to the accident which caused his death, by negligently stepping in front of a motor car on a dark night when the car was so near as to make a collision unavoidable. To this plea there was interposed a general denial.

The trial resulted in a verdict and judgment for plaintiff in the sum of five thousand dollars.

After unavailing motion for a new trial defendant brings the cause to this court by appeal for review. The facts are substantially as follows:

Plaintiff is the widow of Mathias Riska, deceased. On the evening of October 21, 1892, deceased had been in attendance at a gathering of old army men at a post at Tenth and Marion streets in the city of St. Louis, and was on his way home from that place when he was killed. When he started home about half past ten o'clock that night, it was dark, and raining; he carried an umbrella over his head, and walked with "regular step" in the direction of the place of his injury, which occurred as he was crossing Ninth street, by being struck by defendant's car just as he was stepping off of the track. The approaching car, which occasioned the injury, could be seen at least a block from the place of the accident. The testimony was conflicting as to whether or not the gong was rung as the car approached Carroll street, as well also as to the rate of speed at which it was moving, being variously estimated by the witnesses at from fifteen to thirty miles an hour, while the maximum rate of speed prescribed by the ordinances of the city was ten miles per hour.

The headlight on the car was burning, but the light was dim. The car was lighted by lamps on the inside.

Deceased did not halt when he approached the track, but went upon it, as one witness testified, when the car was only five or six feet from him, "when the car was right away in front of him already." The evidence did not show whether deceased did or did not *look* or listen for an approaching car before attempting to cross the track.

There was an electric light in the street which hung right over the intersection of Carroll street and Ninth street, where the accident occurred. It was burning brightly, so much so that one witness for the plaintiff testified that he was the width of a street away from where the accident occurred, and had no trouble seeing deceased just before the car struck him.

At the close of the evidence adduced by plaintiff, defendant asked the court to instruct the jury that under the law and the evidence the plaintiff could not recover, which was refused, and defendant duly excepted.

While defendant then introduced evidence tending to contradict the evidence introduced by plaintiff with respect to some material matters it in no way tended to strengthen her case.

Over the objections and exceptions of defendant the court of its own motion instructed the jury as follows:

"2. You are instructed that it was the duty of Mathias Riska before crossing the defendant's electric railway track to exercise ordinary care to look and listen for approaching cars, and to exercise ordinary care to avoid coming into collision with such cars and if you find from the evidence in this case that Mathias Riska failed to so look and listen before stepping on the defendant's track, and that by so doing he might have observed the approaching car, and by the exercise of ordinary care, avoided the collision, then your verdict must be for the defendant, even though you believe the defendant was guilty of negligence, unless you further find that the motorman could have stopped the car in time to have avoided the collision by the use of every

means at his command consistent with the safety of the car and of the passengers in said car, after he discovered the danger to the deceased, or could have discovered such danger by a vigilant watch.

"3.   You are instructed that the motorman had a right to assume that Mathias Riska would not undertake to cross the track in front of his car in such a manner as to expose himself to collision, and if you believe from the evidence that he did so, and that the motorman did not and, by the exercise of a vigilant watch, could not have became aware of his intention to so cross the track in time to prevent the accident by stopping said car in the shortest time and space possible consistent with the safety of said car and the passengers therein, then your verdict should be for the defendant.

"5.   You are instructed that it was not the duty of the motorman to attempt to stop his car until in the opinion of a motorman of ordinary judgment in the exercise of ordinary care, the deceased Riska had placed, or was about to place himself in a situation of peril. But it was the duty of the motorman to keep a vigilant watch for persons on or approaching the track and when discovered in danger to use every possible effort consistent with the safety of the passengers in his car to avoid striking such person.

"7.   What constitutes 'ordinary care' as mentioned in these instructions, depends on the facts of each particular case.   It is such care as a person of ordinary prudence would exercise (according to the usual and general experience of mankind), in the same situation and circumstances as those of the person or persons in this case with reference to whom the terms 'ordinary care' is used in these instructions.   The omission of such care is negligence in the sense in which that word is used in these instructions.

"8.   The instructions of the court are all to be taken and read together, and the law therein laid down applied by the jury to the facts of the case, according

as the jury may believe and find the facts to be under the evidence before them."

The following instructions were given on plaintiff's request:

"1.  The court instructs the jury that if they believe from the evidence that on the 21st day of October, 1892, the defendant was operating the railway and car mentioned in the evidence as running over Mathias Riska, at or near the intersection of Ninth and Carroll streets, in the city of St. Louis, then it was the duty of the motorman of said car to keep a vigilant watch for persons on foot, either upon defendant's track or moving towards it; and upon the first appearance of danger to such person, either upon defendant's track or moving towards it, it was the duty of the motorman and conductor of said car to have stopped said car in the shortest time and space possible under the circumstances, consistent with the safety of said car and the passengers on said car; and in this case, if the jury find from the evidence that the motorman in charge of defendant's car, by keeping such vigilant watch, would have seen Mathias Riska moving towards defendant's track, and in danger of injury; and, thereafter, by stopping said car within the shortest time and space possible under the circumstances consistent with the safety of said car and its passengers, would have averted injury to said Riska, and neglected to do so; and if the jury find from the evidence that plaintiff was the wife of Mathias Riska at the time of his death, then plaintiff is entitled to recover five thousand dollars, no more and no less.

"2.  If the jury find from the evidence that on the 21st day of October, 1892, the defendant was operating the railway and car mentioned in the evidence as the car that collided with Mathias Riska; and if the jury further find from the evidence that Ninth and Carroll streets at the north crossing thereof were open public streets within the city of St. Louis; and if the jury

further find from the evidence that Mathias Riska, on the night of October 21, 1892, was crossing over the north crossing of Ninth and Carroll streets, and that whilst so going over said crossing he was struck, run over and killed by one of defendant's street cars; and if the jury further find from the evidence that defendant's servants in charge of said car gave no signal of the approach of said car to said crossing; and if the jury further find from the evidence that such failure to give such signal directly contributed to cause the injury and death of Mathias Riska; and if the jury further find from the evidence that defendant's servants in charge of its car did not exercise ordinary care under the circumstances in so failing to give a signal of the approach of said car to said crossing; and if the jury further find from the evidence in this case that said Mathias Riska exercised ordinary care to look and listen for a car on said track, before going upon and whilst crossing said track, and exercised such care to avoid injury to himself; and if the jury believe from the evidence that the plaintiff was the wife of the said Mathias Riska at the time of his death; then the plaintiff is entitled to recover five thousand dollars.

"3.    If the jury find from the evidence in this case that the defendant was on the 21st day of October, 1892, operating the railway and car mentioned in the evidence, as running over Mathias Riska; and if the jury further find from the evidence that at the time of the death of Mathias Riska, the plaintiff was his wife; and if the jury find from the evidence that Ninth and Carroll streets at the north crossing thereof were open public streets within the city of St. Louis; and if the jury further find from the evidence in this case that the north crossing of Ninth and Carroll streets is north of Lafayette avenue and was so on the 21st day of October, 1892; and if the jury further find from the evidence in this case that on the night of October 21, 1892, Mathias Riska was crossing the north crossing of Ninth and

Carroll streets, and that whilst on said crossing he was run over by one of the defendant's cars and so injured that he died from said injuries at the city of St. Louis the same night; and if the jury find from the evidence that defendant was operating said railway and car, as a street railway, for the purpose of transporting persons for hire from one point to another within the city of St. Louis, as a public conveyance of passengers; and if the jury further find from the evidence that at the time that said car ran against said Mathias Riska, and injured him, the said car was running at a rate of speed in excess of ten miles per hour; and if the jury further find from the evidence that such excessive rate of speed of said car directly contributed to cause the injury and death of said Mathias Riska; and if the jury further find from the evidence that said Mathias Riska before going upon said track and whilst passing over said track, used ordinary care in looking and listening for an approaching car and to avoid injury to himself then the plaintiff is entitled to recover the sum of five thousand dollars.

"4.  The court instructs the jury that by the terms of the ordinance read in evidence, the defendant, by its servants in charge of its car, was prohibited from running said car at a greater rate of speed than ten miles per hour at Ninth and Carroll streets, if Carroll street was north of Lafayette avenue.  And if the defendant's servants in charge of the car that ran over and killed Mathias Riska were at said time running said car at greater rate of speed than ten miles per hour, then such act of running said car at such excessive speed was negligence on the part of the defendant; and if the jury further find from the evidence that such excessive rate of speed directly contributed to cause the death of Mathias Riska; and if the jury further find from the evidence that said Riska used ordinary care to look and listen for an approaching car before going upon said track and in crossing said track, and to avoid injury to

himself, and if the jury further find from the evidence that plaintiff was the wife of Mathias Riska at the time of his death, then plaintiff is entitled to recover five thousand dollars.

"5.    The court instructs the jury that whilst it is the duty of a person in crossing a railroad track to use ordinary care and to look and listen for an approaching car, yet such person is not bound to anticipate in so passing over such track that the persons in charge of such car will violate an ordinance of the city of St. Louis in running the cars. And in this case, if the jury find under the facts and circumstances in evidence that said Mathias Riska did exercise such ordinary care in so looking and listening, and in going upon and crossing said track of defendant and to avoid injury to himself, then this case can not be defeated on the ground that said Riska was guilty of negligence.

"6.    The court instructs the jury that the burden of proving that Mathias Riska did not exercise ordinary care at the time of his injury, is upon the defendant."

To the giving of which said instructions, the defendant then and there excepted at the time.

At the request of defendant the court instructed the jury as follows:

"1.    You are instructed that the ground of this suit is a charge of negligence, which plaintiff makes against defendant's employees, and which she alleges was the cause of the accident complained of. With reference to this charge of negligence, you must not presume it to be true, simply because an accident has occurred, or because plaintiff's husband was struck and killed by defendant's car. Actual negligence on the part of the defendant must be established to your satisfaction by a preponderance of evidence, and the burden of proving it is upon the plaintiff.

"4.    Even though you believe from the evidence that the defendant was guilty of negligence, yet if you

also find from the evidence that when the deceased first reached a point where it was possible for the motorman to discern the danger, the car was so near that it was impossible to stop it in time to prevent striking him, then your verdict must be for the defendant.

"6.   You are instructed that though the burden of proving that the deceased was guilty of negligence is on the defendant, yet you must consider the evidence in-. troduced by plaintiff as well as that of the defendant in determining that question.''

It is said that the demurrer to the evidence should have been sustained.  The grounds upon which this contention is bottomed are that the evidence for plaintiff disclosed that the car could have been seen by the deceased at least a block away if he had looked; that it could have been heard if he had listened, but that he neither looked nor listened, but 'on a dark rainy night, with an umbrella over his head, walked upon the track, only six feet in front of a moving car, without looking to see whether the car was approaching or not, nor giving any heed to his surroundings.

It is admitted by defendant that it was guilty of negligence in running its car at a rate of speed prohibited by the ordinances of the city at the time of the accident.   But even if it were not admitted, the evidence conclusively showed that such was the case.   Plaintiff was, therefore, entitled to recover unless the preponderance of the evidence showed that her deceased husband was guilty of negligence which contributed to his injury in failing to look and listen for the car, before he entered upon defendant's tracks.

There was no one with deceased at the time of the accident.   He had an umbrella over his head, and, whether he looked or listened for an approaching car before attempting to cross the track, no one knew, and in the absence of such evidence it must be presumed that he was in the exercise of due care, listened, and, as there was no obstruction in the way, the headlight on the car

burning, and the car lighted in the inside, that he saw it, but indulging the presumption, as he had a right to do, that the car was not moving at a greater rate of speed than that prescribed by ordinance, that he could cross the tracks in safety, he attempted to do so, and was run over by the car and killed.

In the case of Weller v. Railroad, 120 Mo. l. c. 650, it was said:

"The rule that ordinary care requires a traveller at a railway crossing to look up and down the track, when the view is unobstructed, before venturing to cross it, is drawn from the ordinary conduct of the average of mankind in the daily affairs of life. From the same source is deduced also a correlative rule that, in the absence of direct evidence or rebutting circumstances, one, in attempting to cross a railroad track, will be presumed to have been in the exercise of proper care. (Petty v. Railroad, 88 Mo. 320; Schlereth v. Railroad, 115 Mo. 87; Crumpley v. Railroad, 111 Mo. 158.)" [Hutchinson v. Railroad, 161 Mo. 246.]

In Buesching v. St. Louis Gaslight Co., 73 Mo. l. c. 233, it is said: "The presumption of due care always obtains in favor of a plaintiff in an action to recover damages for an injury sustained by him through the alleged negligence of another." [Jennings v. Railroad, 112 Mo. 268; Petty v. Railroad, 88 Mo. 306; Crumpley v. Railroad, 111 Mo. 152; Sullivan v. Railroad, 117 Mo. 214; Weller v. Railroad, 164 Mo. 180.]

"Deceased had the right to presume that the defendant would obey the ordinance of the city regulating the speed of its cars, and when this presumption, together with the presumption that the deceased was, at the time of the accident, in the absence of any evidence to the contrary, in the exercise of due care, are indulged, the plaintiff was entitled to recover unless it conclusively appeared from the evidence adduced by plaintiff, either by the direct or cross-examination of her own witnesses, that her deceased husband was guilty of negli-

gence contributing directly to his own injury. And in order to overcome these presumptions and to defeat plaintiff's action, it devolved upon defendant to show by the weight of the evidence a failure on the part of the deceased to exercise ordinary care to avoid the injury, and that his failure to exercise such care was its proximate cause, and so direct and immediate that, but for the want of such ordinary care, the injury would not have occurred." [Weller v. Railroad, 164 Mo. l. c. 199.]

But defendant insists that this presumption was overcome by the evidence of plaintiff's witness Hahn, who testified that deceased had an umbrella over his head at the time of the accident, that he did not notice him lift his umbrella before he was struck by the car, that he couldn't notice that it was drawn down over his head; that he could not say that he either raised his umbrella, or that he either looked to the right or to the left. There was no evidence to the contrary, and we submit that this falls far short of showing that deceased did not look before attempting to cross the track. And, in the absence of some evidence that he did or did not do so, the presumption must be indulged that he was in the exercise of due care, that is, that he looked for approaching cars, and saw the one which caused the injury.

It is, however, argued by defendant that the presumption that deceased saw the approaching car could not be indulged, because that would be predicating presumption upon a presumption, that is, upon the presumption that deceased was in the exercise of due care, which the law does not permit. But it may be pertinently asked, what is due care? It is said "by due care is meant reasonable care adapted to the circumstances of the case." [10 Am. and Eng. Ency. of Law (2 Ed.), 284, 285.] Now it will not be contended that if deceased did not look for the car before crossing the track he was in the exercise of due care, for it is clear that unless he did so, he was not in the exercise of such care. Nor

is the fact that deceased had the right to assume that defendant would not run its cars in excess of the rate of speed prescribed by the ordinances of the city basing such presumption on that of the presumption that deceased was in the exercise of due care. It is only when one presumption has for its predicate another that the latter will not be permitted, for to do so "would be to spin out the chain of presumptions into the regions of the barest conjecture." [Diel v. Railroad, 37 Mo. App. 454.] In the case at bar the presumption that deceased was in the exercise of due care formed no predicate for the presumption that the car was not running at an excessive rate of speed, for they were with respect to entirely different matters, the latter being in favor of the defendant, that is, that it was not in violation of the law, which plaintiff had to overcome by evidence in order to her recovery.

In Weller v. Railroad, 164 Mo. 180, it was held that the deceased had the right to make four separate and distinct presumptions: that the railroad would obey the ordinance regulating its speed; that it would obey the ordinance requiring a lamp or headlight on moving trains; that it would obey the ordinance requiring the bell to be rung; and to act on the presumption that the railroad would obey each and all unless he knew or had reason, as of a person of ordinary prudence, to believe the contrary. But, as in the case at bar, they were with respect to different matters.

In Meadows v. Life Ins. Co., 129 Mo. 76, two presumptions were indulged, that is, that the deceased was in the exercise of due care, and that in the absence of evidence to the contrary it would be presumed that his death was caused by accident.

Deceased was not a trespasser, but had a right, equal to that of defendant, to the use of the street. He also had the right to presume that defendant would discharge its duties and obey the laws and ordinances of the city regulating the management of its cars.

[Jennings v. Railroad, 112 Mo. 268; Hilz v. Railroad, 101 Mo. 42; McPherson v. Railroad, 97 Mo. 253; Bowen v. Railroad, 95 Mo. 276.]

It was held in Crumpley v. Railroad, 111 Mo. 152, that one crossing a railroad track at a public crossing will be presumed to have exercised due care and diligen, in the absence of evidence to the contrary. And that such person also has a right to assume that the statutory signals will be given, and to so act. Nor is such holding in conflict with the physical facts disclosed by the record.

But notwithstanding the car was running at an unlawful rate of speed at the time of the accident, yet, if deceased knew it, or, if there had been no ordinance regulating the speed of cars and he had attempted to cross the track within five or six feet in front of the car and had been killed, he would have been guilty of such contributory negligence as to preclude a recovery in damages on account of his death; but, where the law, as in the case at bar, regulates the speed of cars, every pedestrian has the right to presume, in the absence of evidence to the contrary, that they will not be run in violation of it, and to gauge his movements accordingly.

Our conclusion is that error was not committed in refusing the instruction in the nature of a demurrer to the evidence.

The second instruction given by the court of its own motion is criticised upon the ground, as claimed, that it presents an issue not made by the pleadings, that of negligence after those in charge of the train discovered, or should have discovered, the danger of the deceased. This instruction was drawn with a view to the first or common law cause of action, stated in the petition, and was not erroneous because it embraced a matter that was admissible in evidence under that count as tending to show negligence on the part of defendant's servants in the management of the car. But it is said that there was no evidence that the cars could have been

stopped after its operator knew, or ought to have known, that the deceased was going on the track. That there was no positive evidence of these facts is true, but the motorman on the car testified that when he saw deceased he was fifteen or sixteen feet away, and between the two tracks, while there was other evidence tending to show that he could have seen him at least the width of the street had be been looking; that the car was about thirty feet in length; that it stopped in about a car length after the collision; that deceased was found about thirty feet north of the crossing, and about six feet to the rear of the car. The motorman also testified that when he first saw deceased he was fifteen or sixteen feet north of the crossing, but was not on it, and that he did not see him when he left the curbstone. There was a city light burning brightly at the crossing of this street.

The evidence showed that the motorman could have seen deceased on the track, or his dangerous position, at least the width of the street, and as the car was thirty feet in length, and was stopped in one car length after the collision, it would seem to logically follow that it could have been stopped within the same distance before the collision. If the car was running, as the evidence shows, from fifteen to thirty miles an hour, the mean speed would be twenty-two and one-half miles per hour.

Deceased was just leaving the track on which the car was moving; this was about five feet. He was struck just at the east side of the track. He was walking in ordinary walk, say three miles an hour. This would make the car run $7\frac{1}{2}$ times as fast as he was walking. Whilst he walked the five feet across the track the car would run $7\frac{1}{2}$ times as far, to-wit, $37\frac{1}{2}$ feet.

It thus seems that the car must have been 35 to 40 feet away when he reached the west rail.

If the deceased then saw the car, he had no reason to apprehend danger to his passage. For, if it had been running at the lawful rate of ten miles an hour, he would have been able to have crossed in entire safety.

Another objection to this instruction, not made, however, upon the former hearing, is that the allegation of common law negligence is merely introductory, is not the charging part of the petition, and is modified by the specific negligence alleged. Granting for the sake of the argument, but not conceding that this position is correct, should the judgment be reversed upon those grounds? We think not, for even if erroneous and if not authorized by the pleadings, it is, in our opinion, no prejudicial error, for the reason that no verdict for plaintiff was authorized by it, but her right to recovery was predicated solely upon the allegations of the petition to the effect that the car was run at a dangerous and great rate of speed, without warning or signal by bell or otherwise of its approach to the crossing; that it was running at an excessive rate of speed prescribed by ordinance, and in violation of the ordinances of the city requiring defendant's motorman to keep a vigilant watch for persons on foot either on or approaching the track and upon the first appearance of danger to stop the car in the shortest time and space possible. Moreover, it is correct in principle upon the facts disclosed by the record.

The evidence was conflicting as to whether or not the gong was rung by the motorman when he discovered deceased on the crossing and about to step upon the track. The accident occurred at a public crossing where greater care and precaution were required of those in charge of the car to prevent injury to persons crossing the streets than at points between such crossings. From these facts it might well have been inferred, that if the motorman had been keeping a vigilant watch for persons either on or approaching the track, and had been running the car not exceeding ten miles per hour as required by the ordinances of the city, he could have stopped the car after he knew or ought to have known

that deceased was going on the track, in time to have avoided running over him.

Another objection urged against this instruction is that no proof was offered that the defendant was in any manner bound by the ordinances read in evidence.

The violation of these ordinances was not only admitted by defendant, but there was evidence tending to show that but for such violation the deceased would have had ample time to cross the tracks without injury.

The position of defendant upon this question is, that there must have been an acceptance by defendant company of this ordinance, which is generally known as the "vigilant watch" ordinance, in the absence of the proof of which its provisions are not binding upon defendant company. The ordinance is simply a police regulation, for the protection of the lives and property of the citizens, which the city clearly had the right to pass, and which, like all other ordinances of a similar character, are not necessarily contractual, but are binding upon all corporations which come within their provisions regardless of the fact of their non-acceptance by such corporations. While the same ordinance was not passed upon by this court in either the cases of Jackson v. Railroad, 157 Mo. 621; Hutchinson v. Railroad, 161 Mo. 246; Weller v. Railroad, 164 Mo. 180, ordinances of similar character were, that is, regulating the speed of cars in cities, and it was held in all of them that such ordinances were binding on railroad and street railroad companies, whether their provisions were accepted by them or not.

In an able and exhaustive opinion by Judge BLAND of the St. Louis Court of Appeals in the case of Gebhardt v. Transit Co., 97 Mo. App. 373, in passing upon a similar ordinance, it was held, that it was a police regulation conferring a right of action on a party injured in consequence of a violation of it, without any allegation or proof that the ordinance had been accepted by the street car company.

The same rule has been subsequently re-affirmed by that court in Meyers v. Transit Company, 99 Mo. App. 363, and in Sepetowski v. Transit Company, 102 Mo. App. 119, and can no longer be regarded as an open question in this State.

The point is made that none of the instructions given on the part of plaintiff require the jury to find that any one or more of the negligent acts charged caused the injury and death for which the action was brought, but this position is, we think, clearly untenable and not supported by the record.   The tenth instruction given in behalf of plaintiff told the jury in express terms  that if they find from the evidence that defendants' servants in charge of said car  gave no signal of the approach of said car to said crossing; and if the jury further find from the evidence that such failure to give such signal directly contributed to cause the injury and death of Mathias, etc.   Plaintiff's eleventh and twelfth instructions are equally explicit with respect to the excessive rate of speed as prescribed by ordinance, and told the jury that if they find from the evidence that such excessive rate of speed of  said car directly contributed to cause the injury and death of said Mathias Riska, etc.   It would be difficult to couch an instruction in plainer or more pointed language than the parts of these instructions with reference to the cause of the injury.

The judgment is affirmed.  All of this Division concur.