State ex rel. Vogt v. Reynolds.

THE STATE ex rel. OSCAR VOGT v. GEORGE D. REYNOLDS et al., Judges of St. Louis Court of Appeals.

In Banc, October 9, 1922.

1. **CERTIORARI: To Court of Appeals: Examination of Record.** Upon *certiorari* to a court of appeals, wherein contravention of prior decisions is charged, the Supreme Court will look to the record before said court of appeals for an instruction referred to and condemned but not set out in its opinion.

2. ———: ———: **Vigilant Watch Ordinance: Ordinary Care: Instruction.** A violation of the Vigilant-Watch Ordinance of St. Louis, declaring that conductors, motormen and all other persons in charge of a street car "shall keep vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons or vehicles the car shall be stopped in the shortest time and space possible," is negligence *per se*. In travel-congested parts of the city said ordinance exacts no higher degree of care than is

demanded by the common law, which commands motormen to exercise the highest degree of care at such places. But as to other parts of the city the ordinance exacts a higher degree of care than does the common law. It applies to the whole city, and exacts of motormen and others in charge of street cars anywhere in the city to exercise more than ordinary care, for it commands them to keep a vigilant watch for vehicles or persons on the track or moving towards it, and on the first appearance of danger to them to stop the car in the shortest time and space possible, and "vigilant" means to be alertly watchful as one keeping vigil, and a "vigilant watch" means an attentive watch, and the ordinance requires the motorman to anticipate that those approaching the track will come within the danger zone, and that those within it will not seasonably leave it; and the Court of Appeals in holding that an instruction for plaintiff, in the language of the ordinance, was erroneous, because it did not tell the jury that the defendant was only responsible for the failure of the motorman to exercise ordinary care to stop the car within the shortest time and space possible, contravened Cytron v. Transit Co., 205 Mo. 692, and other decisions of the Supreme Court.

*Held*, by ELDER, J., dissenting, that it was held in Sluder v. Transit Co., 189 Mo. 107, that the vigilant-watch ordinance was merely declaratory of the common law, and exacts of a motorman no more than ordinary care; that said case was decided in Court in Banc, and was not either expressly overruled or criticised by Cytron v. Transit Co. or any other subsequent case decided by Court in Banc; that all other later cases containing expressions seemingly announcing a contrary rule were cases decided in division, but none of them expressly dissent from the doctrine announced in the Sluder Case; and that, therefore, as the Court of Appeals in its opinion in this case distinctly say they felt bound by the Sluder Case to condemn the instant instruction, and said conclusion is entirely consistent with that case, there is no such conflict in decisions as authorizes the Supreme Court to quash their opinion.

3. ———: ———: ———: **Declaratory of Common Law.** The Vigilant-Watch Ordinance of the city of St. Louis requires more care than does the common law, and so much of the opinion in Sluder v. Transit Co., 189 Mo. 107, as holds that it is merely declaratory of the common law is overruled, for it is based on a misconception of the charter. powers of the city to regulate the use of its streets and the operation of street cars, steam railroads and other dangerous vehicles thereon.

4. ———: ———: ———: **Power of City to Enact.** Both by the Constitution authorizing St. Louis to frame a charter for its own government consistent with and subject to the laws of the State, and by the charter itself, the city has the police power to regulate the use of its streets and to enact ordinances to protect the life and persons of its people, and to require those who operate street cars to exercise more care to avoid injuring travelers and vehicles than is exacted by the common law, such as the Vigilant-Watch Ordinance, which is an enactment in the exercise of the delegated police power authorized by the city charter, and in no wise inconsistent with the Constitution and laws of the State on the subject.

5. ———: ———: ———: **Inconsistent with Statute and Common Law.** A police regulation whose enactment is authorized by the city charter is not inconsistent with a state statute or the common law for that it exacts more care of its citizens in the use of its streets than does either.

6. ———: ———: ———: **Unreasonable Exercise.** The exercise of the police power by the State or its cities can be declared improper or invalid only when rules and regulations imposed thereunder are unreasonable; and the Vigilant-Watch Ordinance of St. Louis is not unreasonable, but there are the best of reasons why motormen operating street cars should be required at all times and in all places within the city to keep vigilant watch and be prepared to stop them in the shortest time and space possible.

### *Certiorari.*

Opinion of Court of Appeals quashed.

*J. E. Carroll* for relator.

(1) Relator's first instruction correctly states the law under the facts in the case. Hovarka v. Transit Co., 191 Mo. 441, 452; White v. Railroad, 202 Mo. 539, 555, 564; Spencer v. United Railways, 222 Mo. 310, 323; Riska v. Union Depot Railroad, 180 Mo. 168; Eckhard v. Transit Co., 190 Mo. 593, 605, 621; Sluder v. Transit Co., 189 Mo. 107; Gubernick v. United Railways, 217 S. W. 33; Esstman v. United Railways, 216 S. W. 528. (2) The Vigilant-Watch Ordinance is not the "last chance"

or the "humanitarian doctrine." Gubernick v. United Railways, 217 S. W. 35; Ellis v. Metr. Street Rys., 234 Mo. 657, 678; Dechner v. Railroad, 200 Mo. 329. (3) An instruction defining a motorman's duty under the Vigilant-Watch Ordinance should not be qualified by use of the unexplained phrase "exercise of, ordinary care." Hovarka v. Transit Co., 191 Mo. 441, 454. (4) There are two duties imposed on a motorman under the Vigilant-Watch Ordinance, to-wit: First, to keep a vigilant watch for persons or vehicles on the track or approaching the track; second, on the first appearance of danger to said person or vehicle, to stop the car in shortest space and time possible. A failure to do or perform either duty is negligence *per se*. Gubernick v. United Railways, 217 S. W. 33; Esstman v. United Railways, 216 S. W. 528.

*Charles W. Bates, T. E. Francis* and *Albert D. Nortoni* for respondents.

(1) On *certiorari* to the Court of Appeals the examination and review in this court is limited to the question of conflict. State ex rel. Basket Co. v. Reynolds, 224 S. W. 403; State ex rel. Pelligreen Const. Co. v. Reynolds, 279 Mo. 493, 498; State ex rel. Boatmen's Bank v. Reynolds, 281 Mo. 9; State ex rel. Majestic Mfg. Co. v. Reynolds, 186 S. W. 1072. (2) On *certiorari* to the Court of Appeals this court does not determine whether the Court of Appeals erred in its application of the rules of law to the facts in the case before it, but only whether, in announcing the law of the case upon the facts stated in its opinion, it failed to follow the last previous ruling of the Supreme Court. State ex rel. Peters v. Reynolds, 214 S. W. 122; State ex rel. Basket Co. v. Reynolds, 224 S. W. 403; State ex rel. Majestic Mfg. Co. v. Reynolds, 186 S. W. 1072; State ex rel. Boatmen's Bank v. Reynolds, 281 Mo. 9. (3) Even though the judgment of the Court of Appeals may be erroneous, if it is not in conflict with

the last previous ruling of this court on the same question, such judgment will not be quashed on *certiorari*. State ex rel. Paving Co. v. Reynolds, 278 Mo. 560, 569; State ex rel. Majestic Mfg. Co. v. Reynolds, 186 S. W. 1072. (4) Even though a conflicting opinion of a division of the Supreme Court be more recent in point of time than a prior decision of Court in Banc on the same question, such last prior opinion of Court in Banc is the last previous decision of the Supreme Court which the Court of Appeals must follow. State ex rel. United Rys. v. Reynolds, 278 Mo. 554; State ex rel. Basket Co. v. Reynolds, 224 S. W. 404. (5) The Vigilant-Watch Ordinance imposes the obligation to exercise ordinary care and nothing more, says Court in Banc in Sluder v. Transit Co., 189 Mo. 107, 137. (6) If the Vigilant-Watch Ordinance is to be sued upon and employed in a civil action as a predicate to recover damages as for negligence on account of personal injuries, then it may not be interpreted as imposing an obligation to exercise more than ordinary care, for to do so renders it obnoxious to the law of the State. (a) Even the charter of St. Louis must be "in harmony with and subject to the law of the State." Sec. 23, Art. IX, Mo. Constitution. (b) The city is restricted to passing ordinances "in conformity to the law of the State" by Section 8704, Revised Statutes 1919. (c) The city is without power to pass an ordinance which is not in conformity to the law of the State. St. Louis v. Meyer, 185 Mo. 583. (d) Although the charter authorizes the city "to declare, prevent and abate nuisances," it is not within the power of the city to declare "smoke alone" a nuisance, such smoke alone being permissible at common law. St. Louis v. Heitzeberg, 141 Mo. 375. (e) Neither by charter nor ordinance may the City change the rule of procedure, nor impair nor abrogate the rights of a citizen under the law of the State in suits at law in the courts of the State. Badgley v. St. Louis, 149 Mo. 122. (f) The public policy of the State was and is declared in respect of suits

for damages as for personal injuries, on the grounds of negligence, received through collisions in the street, by our Legislature, in adopting the common law of England and the rule of ordinary care as parcel of it on January 19, 1816. Sec. 7048, R. S. 1919. (7) This court has never held in any case that the Vigilant-Watch Ordinance required anything more than ordinary care. There is not a word to this effect in Gubernick v. United Rys., 217 S. W. 33. It is the generally accepted law, as held in the Gubernick Case, that contributory negligence is always a defense to mere primary negligence or to statutory or ordinance negligence. See Beach on Cont. Neg. (3 Ed.) sec. 49; 29 Cyc. 508; 21 Amer. & Eng. Ency. Law (2 Ed.) 483.

DAVID E. BLAIR, J.—This is an original proceeding in this court wherein relator seeks by our writ of *certiorari* to quash the opinion and judgment of respondents as judges of the St. Louis Court of Appeals in the case of Oscar Vogt *versus* United Railways Company.

We quote from the opinion of respondents as follows:

"This is a suit for damages alleged to have accrued on account of personal injuries received by the plaintiff in a collision of a motor truck (on which plaintiff was riding, but which he was not operating) with one of defendant's street cars, in the city of St. Louis. Judgment resulted in favor of plaintiff for the sum of $3,000, and defendant appeals.

"The petition specifically pleads the last-chance doctrine, the Vigilant-Watch Ordinance, and the speed ordinance, which fixes the speed of street cars at not exceeding ten miles per hour at the place where the collision occurred. The answer is a general denial.

"The testimony adduced on behalf of plaintiff and the testimony of the witnesses for defendant upon the essential facts in the case were contradictory; however,

there is no question but that there was substantial testimony sufficient to warrant the submission of the case to the jury on the assignments of negligence predicated upon the violation of the Vigilant-Watch Ordinance and the speed ordinance.

"Plaintiff's instruction numbered one, which covers the entire case and directs a verdict, which instruction is hypothesized upon plaintiff's right to recovery on the issue of the violation of the Vigilant-Watch Ordinance, must be condemned in that it has been ruled that under the Vigilant-Watch Ordinance the defendant is only responsible for the failure of its motorman to exercise ordinary care to stop the car by the use of the appliances at hand with safety to the passengers in order to avoid the collision, while said instruction permits a recovery against the defendant if the jury find that the motorman could have avoided colliding with the automobile truck upon which the plaintiff was riding after the motorman saw, or by the exercise of ordinary care could have seen, the truck upon which plaintiff was riding in danger of being struck by said car, by stopping the car, 'within the shortest time and space possible under the circumstances, with due regard for the safety of the said car and the passengers thereon.'"

The opinion of respondent refers to, but does not set out, plaintiff's instruction number one. We will therefore look to the record before the St. Louis Court of Appeals and examine said instruction in this proceeding as set out in said record, the same as we would if it had been set out in the opinion before us. [State ex rel. Kansas City v. Ellison, 281 Mo. 667, 220 S. W. 498.] Said instruction, after setting out the substance of the Vigilant-Watch Ordinance, reads as follows:

". . . The court further instructs the jury that if you find and believe from the evidence that on the 17th day of April, 1914, the plaintiff was riding on the automobile truck mentioned in the evidence and that said automobile truck was moving either on or towards the

defendant's street car track on O'Fallon Street at or near the intersection of said O'Fallon Street with Thirteenth Street; that while said automobile truck was so moving towards or upon the defendant's said truck, a car of the defendant approached on said track from the east, and that the motorman of the defendant operating said car, by keeping a vigilant watch for vehicles moving towards or upon the defendant's said track, would and could have seen the said truck, upon which the plaintiff was riding, moving towards or upon the defendant's track, and in danger of being struck by said car, and that thereafter by stopping said car within the shortest time and space possible under the circumstances, with due regard for the safety of the said car and the passengers thereon, would and could have avoided colliding with the said automobile truck and injuring the plaintiff, yet failed and neglected to do so, and that the said act of the defendant's motorman in failing to keep such vigilant watch, if you find he did so fail to do, directly caused the injuries to plaintiff mentioned in the evidence, then your verdict must be for the plaintiff.''

The respondents' opinion refers to the contents of the petition upon which the case was tried in the circuit court, but does not set the same out in full. By examining such petition as set out in the record before the St. Louis Court of Appeals, we find that there is pleaded in said petition as a ground for recovery a violation by the defendant of a portion of Section 2380 of ordinance No. 26653, approved November 9, 1912, as follows:

"Sec. 2380. *Subdivision Fourth*: The conductor, motorman, gripman, driver or any other person in charge of each car shall keep vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving towards it, and on the first appearance of danger to such persons or vehicles the car shall be stopped in the shortest time and space possible.''

Relator contends that respondents' opinion, the essence of which is above quoted, is in conflict with the

following controlling opinions of this court, to-wit: Gubernick v. United Railways, 217 S. W. 33, 1. c. 35; Esstman v. United Railways, 216 S. W. 1. c. 528; Spencer v. Transit Co., 222 Mo. 1. c. 323-4; White v. Railroad, 202 Mo. 1. c. 555-564; Eckhard v. Transit Co., 190 Mo. 1 c. 605-621; Sluder v. Transit Co., 189 Mo. 107, 1. c. 136; Riska v. Railroad Co., 180 Mo. 168, and Hovarka v. Transit Co., 191 Mo. 1. c. 454-5.

The question for our determination is whether respondents' opinion is in conflict with controlling decisions of this court, by reason of the holding in said opinion that relator's instruction one was erroneous, because the jury was not told therein that defendant was only responsible for the failure of its motorman to exercise *ordinary care* to stop the car within the shortest time and space possible, etc. Relator's instruction one places upon defendant the duty to stop the car within the shortest time and space possible *under the circumstances,* with due regard for the safety of the car and the passengers thereon and does not define the degree of care to be exercised by the motorman in so doing. Otherwise stated, the qustion is whether an instruction substantially in the language of the ordinance is sufficient under the latest controlling decision of this court, or whether our decisions have laid down the rule that the motorman is only required to exercise *ordinary care* to stop the car within the shortest time and space possible under the circumstances.

Respondents hold in their opinion that under the rule laid down by this court in the case of Sluder v. Transit Co., 189 Mo. 107, the instruction was erroneous and must be condemned because the defendant is only responsible for the failure of its motorman to exercise ordinary care to stop the car, etc. Relator contends that respondents' opinion must be quashed because it is in conflict with the Sluder Case, and does not in fact follow that case, and also in conflict with other cases decided by this court. It was contended in the Sluder Case that the

Vigilant-Watch Ordinance "exacts a higher degree of diligence and care than the common-law rule of ordinary care and imposes a harsher one, and for that reason is not in harmony with the general laws of the State, and hence void." GANTT, J., said:

"This objection to the ordinance in question was urged by the same learned counsel in the St. Louis Court of Appeals in Sepetowski v. Railroad, 102 Mo. App. 119, but that court held that 'properly construed it is but declaratory of the common-law duty of corporations operating street railways in populous cities,' and that conclusion is in harmony with the decision of this court. [Riska v. Railroad, 180 Mo. 168.] . . .

"The same principle is enunciated in Holden v. Railroad, 177 Mo. 456, wherein the rule announced in Hicks v. Railroad, 64 Mo. l. c. 439, that 'in running through towns and cities, and over public crossings, they are expected to be more careful than at other places where not so likely to injure persons or property,' is approved, as was the rule announced in Frick v. Railroad, 75 Mo. l. c. 609, to the effect that 'a less degree of vigilance will ordinarily be required between the streets of a town or city, than will be required at a street crossing, or when running longitudinally in a street.' Indeed, so apparent is the duty of the driver or motorman in charge of cars moving on the rapid transit lines maintained by street car companies, to keep a constant and vigilant lookout for persons and vehicles, that a failure to do so would be regarded as negligence and a failure to exercise ordinary care in the absence of an ordinance."

Judge GANTT then proceeds:

"Our conclusion is that this ordinance . . . exacts no more than ordinary care, when the conditions and circumstances to which it is applicable are considered, and that a breach of its requirements is negligence."

The opinion of respondents is not in conflict with what was actually said by Judge GANTT in disposing of the Sluder Case. It is, however, in conflict with what

was in fact decided in that case when the entire record is carefully examined. Instruction three in the Sluder Case, as we have determined from an examination of our files, was as follows:

"The jury are instructed that by the terms of the Ordinance No. 19,991, of the city of St. Louis, read in evidence, the defendant's motorman, conductor or other person in charge of said car mentioned in evidence, were bound to keep a vigilant watch for vehicles moving towards defendant's tracks, and upon the first appearance of danger to such vehicles, the person or persons in charge of said car were bound to stop said car within the shortest time and space possible, and a failure to keep such vigilant watch, and to stop said car, if you find from the evidence that defendant's servants, agents or employees did so fail, was negligence on the part of the defendant, provided you find from the evidence that such failure directly caused such collision."

This instruction was attacked by appellant in that case on the ground that it required the car to be stopped in the shortest time and space possible, without any reference to the safety of the car and passengers thereon or to the surrounding circumstances. The instruction was not discussed in Judge GANTT's opinion, but was clearly approved, as is evidenced by the following general language:

"We have considered all the propositions advanced for a reversal of the judgment, and in our opinion there was no reversible error committed on the trial, and the judgment is affirmed."

Instruction three in the Sluder Case is open to the objections respondents make to instruction one before us in the instant case and to additional objections of the same nature. But because of the failure of Judge GANTT to discuss the instruction, the opinion of respondents is not out of harmony with what was actually said—the rule of law announced—in that case.

295 Mo.—25

But we have concluded that respondents' opinion is in conflict with Cytron v. Transit Co., 205 Mo. 692, wherein LAMM, J., in approving an instruction given in that case, said:

"By plaintiffs' fourth instruction the jury were told, among other things, that if they found and believed from the evidence that the motorman was not keeping a vigilant watch for all persons, especially children, either on said track or moving towards it, or that said motorman, upon the first appearance to him of danger to Morris, did not stop said car in the shortest time and space possible under the circumstances, consistent with the safety of the passengers and by the use of means at hand and under his control, and found from the evidence that said motorman by keeping such vigilant watch would have seen said child on said track or moving towards the same and in peril of being run over, and if by the exercise of ordinary care by so stopping said car in the shortest time and space, etc., under the circumstances and consistent with the safety of the passengers and by the use of the means at hand and under his control, he could have saved the child, and if the jurors further find and believe from the evidence that the failure to keep such watch or the failure to stop said car as aforesaid was the direct cause of the death of the child, then your verdict shall be for plaintiff (unless you find the child or its parents were guilty of contributory negligence as elsewhere defined). We find no fault with this instruction. The rule of law announced by it was but the application of the Vigilant Watch Ordinance to the case and has been again and again approved by this court when applied to the facts in judgment."

Relator's instruction one, which respondents criticise, is in harmony with the instruction approved in the Cytron Case, which case was decided by this Court in Banc after the Sluder Case was decided.

The opinion of respondents is also in conflict with Spencer v. Transit Co., 222 Mo. 310, wherein an instruc-

State ex rel. Vogt v. Reynolds.

tion, subject to the same criticism respondents level against relator's instruction one, was approved. However, the point that the instruction in the language of the ordinance exacted more than ordinary care was not considered in the Spencer Case.

In several cases, instructions based on the Vigilant-Watch Ordinance, have been approved where said instructions were subject to the same criticism respondents make of relator's instruction one. In none of such instructions was the jury told that defendant was "only responsible for the failure of its motorman to exercise ordinary care to stop the car by the use of the appliances at hand." [White v. Railroad, 202 Mo. 539, l. c. 555 and 564; Eckhard v. Transit Co., 190 Mo. 593, l. c. 605 and 621; Riska v. Union Depot R. R. Co., 180 Mo. 168, l. c. 183.]

There was nothing decided in Gubernick v. Railways Co., 217 S. W. (Mo.) 33, in conflict with respondents' opinion. The degree of care required of the motorman in stopping his car was not discussed. The conclusion announced therein was that the Vigilant-Watch Ordinance was not the same thing as the humanitarian rule, and that contributory negligence was a defense in an action based on the violation of the ordinance. However, Graves, J., in passing, said that the Vigilant-Watch Ordinance requires a higher degree of care than does the common law.

The precedents found in the instructions approved in the cases above cited and in those discussed, including the instruction approved in the Sluder Case itself, support the correctness of relator's instruction one. That instruction is substantially in the language of the ordinance, violation of which is negligence *per se*.

We have carefully studied the Vigilant-Watch Ordinance, and it is our conclusion that it requires a higher degree of care than is required of a motorman under the common law. The ordinance by its terms applies the same degree of care uniformly throughout all parts of

the city. The common law requires greater care at certain places than at others. It cannot be doubted that at certain places in a travel-congested city the degree of care required by the ordinance is the same degree of care required at common law. This is certainly true at points in St. Louis, like Olive and Broadway. There the common law demands the very highest degree of care because of congested traffic conditions. It demands that, at such a place and the presence of such congestion, the motorman keep a vigilant lookout for vehicles and persons on the track or moving towards it and if danger of collision appears, that the car be stopped in the shortest time and space possible. Such are the requirements of the ordinance, but the ordinance requirements are the same for the sparsely inhabited portions of the city and on little used streets. In such places the ordinance requires more than the ordinary care sufficient under the common law. It requires vigilance at all times and in all places. Vigilance imports something more than the attentiveness and watchfulness implied by the common law. The latter requires only such care to observe danger ahead as men of ordinary prudence exercise under like or similar circumstances. True, it is greater care than that expected of one driving a safe team of horses in the same place, but it is only ordinary care after all when measured by the character of the instrumentality employed and its capacity for and certainty of inflicting serious injury or death in the event of collision. Vigilant watch contemplates a sort of eager, sustained attention. "Vigilant" is defined by Webster's New International Dictionary as "alertly watchful as one keeping vigil;" "attentive to discover and avoid danger." Applying this definition "vigilant watch" means a watchful watch, an attentive watch. Common-law care would permit the motorman on less used streets to relax somewhat and to assume that people and vehicles will stop before actually reaching and entering the danger zone; or if already within such zone, that they will leave it in good time.

The Vigilant-Watch Ordinance requires the motorman to be prepared to stop his car at the first appearance of danger within the shortest time and space possible. It requires the motorman *to anticipate* that those approaching the track will come within the danger zone and that those within it will not seasonably leave it. Under the common law the motorman could assume that no such intention exists in the mind of the person approaching until the contrary appears. If he is already on the track, the motorman is permitted to assume that he will in due time get off of it upon timely signal, and no duty to stop the car or to check its speed rests upon the motorman until it is reasonably apparent that such assumption cannot be safely relied upon. [36 Cyc. 1517; Bunyan v. Citizens' Ry. Co., 127 Mo. 12, l. c. 17; Petty v. St. Louis Ry. Co., 179 Mo. 666, l. c. 676; Boyd v. Ry. Co., 105 Mo. 371; l. c. 381; Eckhard v. Transit Co., 190 Mo. 593, l. c. foot 618; Ross v. Street Railway Co., 113 Mo. App. 600, l. c. 606.]

The foregoing considerations persuade us that the Vigilant-Watch Ordinance requires more than common law care requires. In stating that the ordinance is merely declaratory of the common law, the Sluder Case was in error and on that point must be overruled. Apparently that case was so ruled upon the theory that the ordinance could not be upheld if found to exact of the motorman a higher degree of care than is required at common law. If this is so, the decision was based on an erroneous conception of the powers of the city of St. Louis, which city under its charter has the power to regulate the use of its streets and power to regulate the operation over its streets of streets cars, steam railroads and the like.

The power of the city to regulate the use of its streets and highways and the power to protect the life and limb of its people are part of the police power of the State which it is entirely competent for the State to delegate to the city. This the State has done. By Article

IX, Section 16, of the Constitution of Missouri, both before and since said section was repealed and a new section of the same number was adopted at the election of November 2, 1920, the city of St. Louis had and has the power to frame and adopt a charter for its own government consistent with and subject to the Constitution and laws of the State. The city has adopted a charter under authority of this section. In Article I of said charter various sections are found dealing with the powers of the city which have a bearing upon the validity of the ordinance here in question. We particularly notice the following powers:

Sec. 13. "To regulate the . . . operation . . . of public utilities."

Sec. 14. "To establish . . . maintain . . . public highways, street, boulevards . . . and regulate the use thereof."

Sec. 25. "To define and prohibit . . . and regulate all acts . . . detrimental or liable to be detrimental to the health . . . safety . . . or welfare of the inhabitants of the city."

Sec. 33. "To do all things whatsoever expedient for promoting or maintaining the . . . health, welfare . . . of the city or its inhabitants."

In Article XIX, under the title, "Franchises," Section 1 provides: "All grants or renewals of franchises shall be . . . subject always to the city's power . . . and its authority to regulate . . . methods of conduct or operation. . . ."

It cannot be contended that there is anything in any of the foregoing sections not consistent with the Constitution or laws of the State, except in so far as the power to regulate the rates and service of the utilities of said cities is affected by the enactment of the Public Service Commission Act.

The Vigilant-Watch Ordinance is an enactment in the exercise of the delegated police power of the city recognized in its charter. Said ordinance is clearly au-

thorized under Article I, Section 14, empowering said city to establish streets and regulate the use thereof. We need look no further, yet it may well be said the enactment of said ordinance is authorized under the sections giving the city the power to regulate the operation of its public utilities; to prohibit acts detrimental or liable to be detrimental to the health, safety and welfare of its people; to do all things expedient for promoting or maintaining the welfare of its people. Under Section 8903, Revised Statutes 1919, the city has exclusive control over its streets. Thus ample power to pass the ordinance in question is found in the charter of the city and general statutory provisions.

Nor can it be said concerning this ordinance that it is not in conformity with the general law of the State as limited by Section 8704, Revised Statutes 1919 (Sec. 9582, R. S. 1909), assuming that the common law in respect to the duty of the motorman in operating a street car is part of the general law of the State. The enactment of the ordinance is authorized by special provision of the charter. Nor is there such want of conformity to the general law as to bring the ordinance within the inhibition of said Section 8704. The ordinance duty and the common-law duty differ in some particulars, it is true, but they are not out of harmony or inconsistent. The ordinance includes the common-law duty and something more, but that something more is not inconsistent with common-law duty.

The reasoning of this court in St. Louis v. Cafferata, 24 Mo. 94, and in St. Louis v. DeLassus, 205 Mo. 578, fully sustains the power of the city to enact and enforce the Vigilant-Watch Ordinance. In both cases the city ordinance forbade the keeper of certain stores to sell therein any article on Sunday after nine o'clock a. m. The state law prohibited the sale of goods, etc., on Sunday, except the sale of drugs, medicines, provisions or other articles of immediate necessity. The ordinance forbade *all* sales after nine o'clock a. m., while the state

law forbade sales *at any time* on Sunday, except certain necessary articles, which could be sold at any hour on Sunday. In the Cafferata Case, LEONARD, J., said:

"The ordinance under which the defendant was convicted was a lawful exercise of the power given to the local government 'to make such rules, regulations, by-laws and ordinances for the purpose of maintaining the peace, good government and order of the city, and the trade, commerce and manufactures thereof, as they may deem expedient, not repugnant to the Constitution and laws of this State.' [City Charter of March 3, 1851, art. 3, sec. 2.] The police regulations of the State upon this subject, to be found in the 34th and 35th sections of the 8th article of the act concerning crimes and punishments, have nothing to do with the present proceeding. The general Legislature have regulated the subject for the whole State as they deemed proper, and the city government have made local regulations as they thought fit for the good order and peace of the city. The provisions of the two laws are different, but there is no such inconsistency between them as to annul or in any way affect the provisions of the local law (St. Louis v. Benton, 11 Mo. 61); and the defendant was subject to both laws and amenable to the penalties they prescribed."

In the DeLassus Case, GANTT, J., after quoting from LEONARD, J., part of what we have above set out, said:

"Merely because the city did not make its ordinance as broad as the statute did not render it so inconsistent as to make it void. It could have made its ordinance as broad as the statute and in no wise have conflicted with the Constitution or general laws of the State. [St. Louis v. Schoenbusch, 95 Mo. 618; City of DeSoto v. Brown, 44 Mo. App. 152; Kansas City v. Hallett, 59 Mo. App. 160.]

"Does the fact that the Legislature fixed the punishment for the sales on Sunday prevent the city making a higher fine? We think not, and so it was ruled in Kansas City v. Hallett, supra. The scope and purpose

of the statute and ordinance are the same, the one reaching the supposed evil by making it a criminal offense; the other, providing by ordinance for the civil prosecution. In State ex rel. v. Field, 99 Mo. 352, Judge BLACK, speaking for this court, of cities organized under Section 16 of Article 9 of the Constitution and the provision that they shall be 'consistent with and subject to the Constitution and laws of the State,' said: 'Charters thus adopted will, of necessity, be more or less at variance, and that they will be unlike, in many respects, is within the contemplation of the Constitution.' This statement has since been expressly adopted and reiterated in Kansas City v. Marsh Oil Co., 140 Mo. 458, and Kansas City v. Bacon, 147 Mo. 259. In the latter case, it was added: ' "Consistent with" does not import exact conformity, but means substantial harmony with the principles of the Constitution.' "

For a full discussion of this subject see Peterson v. Chicago & Alton Railway Co., 265 Mo. 462, l. c. 480 and following pages.

The exercise of its police power by the State or the city can only be declared improper or invalid when rules and regulations imposed thereunder can be said to be unreasonable. See State v. Smith, 233 Mo. 242, l. c. 265, and following pages where the authorities are discussed at length.

Clearly the Vigilant-Watch Ordinance is not unreasonable. There are the best of reasons why motormen operating street cars should be required at all times and in all places within the city to keep vigilant watch and to be prepared to stop said street cars in the shortest time and space possible. A street car is a ponderous death-dealing machine, and unless under control at all times is likely to inflict death and injury. Unless the operator is alert at all times to the slightest indication of danger and prepared to stop his car within the shortest time and space possible the instant danger of collision appears, the likelihood of serious injury or death is

enormously increased. A child is likely to rush from the curb or some door-yard and come within the danger zone at any instant, even when the street is unoccupied. The favorite field for the exercise of the police power is in the protection of the lives of the people. The courts have gone to great lengths to sustain laws enacted under the police power. Clearly the power of the city to enact and to enforce its vigilant-watch ordinance cannot be doubted. Our view is that, while the Vigilant-Watch Ordinance requires a higher degree of care than the common law requires, yet, in making such requirement the city was reasonably acting within its appropriate authority.

The foregoing observations may not be regarded as essential to the determination of the issue of conflict of opinion between the St. Louis Court of Appeals and this court, but we feel fully justified in expressing our views as we have done, for the reason that the Sluder Case has caused much uncertainty and confusion among members of the bench and bar concerning the ordinance under consideration, and in so far as it ruled that the ordinance is merely declaratory of common-law duty, that opinion should be gotten out of the way. But it cannot be thus disposed of without a full discussion of the principles of law involved.

The instruction condemned by respondents was well enough. It was not necessary to incorporate therein that the motorman was required only *to exercise ordinary care* to stop the car in the shortest time and space possible by the use of the appliances at hand, etc.

Because the opinion of respondents is in conflict with the Cytron Case and other cases cited, the record of respondents should be quashed.

It is so ordered. *Woodson, Graves, Higbee* and *Walker, JJ.,* concur; *James T. Blair, C. J.,* concurs in the result; *Elder, J.,* dissents in a separate opinion.

ELDER, J. (dissenting).—I cannot concur in the majority opinion. While I agree with the cogent reason-

ing of my learned brother in his analysis of some few of the cases with which the opinion of the Court of Appeals is alleged to conflict, nevertheless, with the conclusion reached as to others I find myself at variance. Holding as he does that the opinion of respondents is in conflict with the Cytron Case and other cases cited by relator, I feel constrained to dissent.

I. Relator contends that the majority opinion of the Court of Appeals and the separate concurring opinion of ALLEN, J., "to the extent that they hold that the case of Sluder v. Transit Co., 189 Mo. 107, declares the Vigilant-Watch Ordinance but declaratory of the humanitarian doctrine, are not in harmony with that case."

In the Sluder Case this court in banc announced the doctrine, l. c. 137, that the Vigilant-Watch Ordinance *"exacts no more than ordinary care,* when the conditions and circumstances to which it is applicable are considered." (Italics ours). By referring to the opinion of the Court of Appeals it becomes clearly apparent that that court intended to follow and did follow the Sluder Case for, in the fourth paragraph of the majority opinion of said court, it is stated: "It has been ruled that under the Vigilant-Watch Ordinance the defendant is only responsible for the failure of its motorman *to exercise ordinary care* to stop the car." (Italics ours). Again, in discussing the opinion in the Gubernick Case, the opinion of the Court of Appeals states: "Certainly, nowhere in the opinion is there a direct ruling that the *Vigilant-Watch Ordinance requires more than ordinary care* on the part of him who is in charge of the car." (Italics ours). Also, in the same paragraph, continuing to speak of the Gubernick Case, the opinion states: "The Gubernick Case being an opinion in division would not be controlling in light of Sluder v. St. Louis Transit Company, 189 Mo. 107." The opinion then proceeds to quote extensively from the Sluder Case. And further, in the separate concurring opinion of Judge ALLEN he express-

ly states: "I concur in the result reached in the majority opinion for the reason that I consider it our duty to follow the Sluder Case." And nowhere in either opinion is the Sluder Case held to-be declaratory of the humanitarian doctrine. What the Sluder Case holds is that the Vigilant-Watch Ordinance only calls for the exercise of ordinary care. And it is for the reason that the instruction criticised by the Court of Appeals required *more* than ordinary care that said court condemned the same. While the Sluder Case may be erroneous in holding that the ordinance does not exact a higher degree of diligence than the common-law rule of ordinary care, nevertheless, for the purposes of this inquiry it is the final word of this court in banc on the subject and is controlling.

Furthermore, granting for the sake of argument that the Court of Appeals may have misconceived the Sluder Case, which we do not concede, nevertheless, under our most recent ruling, on *certiorari* it is not for us to determine whether the Court of Appeals erred in its application of rules of law to the facts stated in its opinion, but only whether upon those facts it announced some conclusion of law contrary to the last previous ruling of this court upon the same or a similar state of facts. [State ex rel. Calhoun v. Reynolds, 233 S .W. 483.] And moreover, if the Court of Appeals erred as a matter of opinion, on *certiorari* we have no authority to quash its judgment on that ground. [State ex rel. Calhoun v. Reynolds, 233 S. W. l. c. 485; State ex rel. American Packing Co. v. Reynolds, 230 S. W. l. c. 644; State ex rel. Wahl v. Reynolds, 272 Mo. l. c. 596.]

II. Relator next urges that the opinion of the Court of Appeals is not in harmony with the case of Gubernick v. United Railways Co., 217 S. W. 33, a decision by Division One of this court, because: First, The opinion holds that "the Vigilant-Watch Ordinance is the same as the humanitarian doctrine," while the Gubernick Case holds that "it may be true that the Vigilant-Watch

Ordinance in a way covers some ground involved in our 'last-chance rule' or 'humanitarian doctrine,' but it is not the 'last-chance rule;' '' second, The opinion holds that under the Vigilant-Watch Ordinance ''defendant is only responsible for the failure of its motorman to exercise ordinary care to stop the car by the use of the appliances at hand with safety to the passengers,'' while the Gubernick Case holds that ''the ordinance requires not only a vigilant watch but prompt action in stopping the car.''

By attempting to draw the foregoing distinctions, relator is in fact insisting that the Vigilant-Watch Ordinance requires something *more* than ordinary care. However, the question as to whether or not the ordinance exacts more than ordinary care was neither presented nor decided in the Gubernick Case. What that case decided was that contributory negligence is a defense to negligence which is a violation of the Vigilant-Watch Ordinance. Moreover, there is nothing in the Gubernick Case which is contradictory of the principle enunciated in the Sluder Case. This relator admits, for in his reply brief he says:

''There is nothing in the Gubernick Case which militates against the Sluder Case; in fact, we have been unable to find a case which holds that the Vigilant-Watch Ordinance exacts anything more than the common-law duty of ordinary care in the circumstances to which the ordinance applies.''

Having ruled, supra, that the Court of Appeals followed the Sluder Case, which case, as has just been said, is in harmony with the Gubernick Case, by logical sequence it ensues that the opinion of that court is not in conflict with the Gubernick Case. But, even if a conflict did exist, the Gubernick Case being a divisional opinion it would have been the duty of the Court of Appeals to follow the Sluder Case, which is the last previous decision of this Court in Banc upon the degree of care required under the Vigilant-Watch Ordinance. [State ex rel. United Railways Co. v. Reynolds, 278 Mo. 554.]

III.   Relator further insists that the ruling of the
Court of Appeals is in conflict with the following de-
cisions of this court, viz.:   Esstman v. United Railways
Co., 216 S. W. 1. c. 528;   Spencer v. Transit Co., 222 Mo.
1. c. 323-4;   White v. Railroad, 202 Mo. 1. c. 555, 564;
Eckhard v. Transit Co., 190 Mo. 1. c. 605-621;   Riska v.
Railroad, 180 Mo. 168;   and Hovarka v. Transit Co., 191
Mo. 1. c. 454-5.   We shall consider these cases *seriatim*.

In Esstman v. United Railways Co., supra, the judg-
ment below was reversed and the cause remanded by
Division One of this court on account of an erroneous
instruction given for defendant.   The said instruction
was in no way declarative of the Vigilant-Watch Ordi-
nance, but told the jury that if they believed from the evi-
dence that the plaintiff ''ran from the east side of High
Street into the car at or near the rear trucks thereof,
while the same was in motion, and thereby received his
injuries, your verdict must be for defendant.''   It was
only incidentally, in discussing a possible basis for the
giving of the instruction, that the measure of the duty of
defendant's motorman was touched upon, and then noth-
ing was said which is violative of either the ruling of the
Court of Appeals or our enunciation in the Sluder Case.
The question here present was not involved, and the case
cannot in any sense be said to be controlling.

In Spencer v. Transit Co., supra, decided by Division
One, relator contends that an instruction similar to that
in the case at bar was approved.   The instruction in the
Spencer Case merely recites the duty of defendant under
the Vigilant-Watch Ordinance, then declares that any
failure to perform such duty was negligence, and closes
with the charge that if the deceased's death was the
result of such negligence plaintiffs were entitled to re-
cover unless plaintiffs or the deceased were guilty of con-
tributory negligence.   The said instruction is entirely dis-
similar to relator's instruction one, and does not contain
the elements criticised by the Court of Appeals.   Further-
more, the error urged in Division One against the instruc-
tion in the Spencer Case was that ''it submits a ques-
tion of law to the jury and is misleading.''   It was counter

to this contention that the instruction was approved, and the question now receiving our attention was not then present or considered. Under such circumstances the approval of the instruction cannot in this proceeding give it the force of a judicial decision.

In White v. Railroad, supra, also decided by Division One, relator urges that an instruction similar to his Instruction One was approved. An examination of the instruction in that case will show that it was predicated upon the premise that the plaintiff could recover if the jury found that the motorman *"saw"* the plaintiff upon the track or so near the same as to be in danger of injury, and that he thereafter *"could have stopped said car"* without injury thereto or to the passengers, and by so stopping the car could have averted the injury, but neglected to do so, while the instant instruction charges that plaintiff can recover if the jury found that by keeping a vigilant watch the motorman *"would and could have seen"* the truck upon which relator was riding, and that thereafter *"by stopping said car"* would and could have avoided the injury, but neglected to do so. (Italics ours). The dissimilarity of the two instructions is manifest. But, regardless of any dissimilarity, the instruction in the White Case, is in harmony with the Sluder Case and therefore in harmony with the ruling of the Court of Appeals, which followed the Sluder Case, by reason of the fact that in the White Case Division One cited the Sluder Case as authority for sustaining the instruction. Consequently there is no conflict between the White Case and the opinion of the Court of Appeals, as contended.

In Eckhard v. Transit Co., and Riska v. Railroad, supra, both opinions by Division Two, relator also claims that instructions similar to his instruction were approved. In the Riska Case we are not directed to the particular instruction meant, but assume it is that appearing at page 183. An examination of these instructions discloses that they do largely resemble relator's Instruction One. In neither case, however, was any particular objection urged against the instruction and consequently the approval thereof cannot be said to be decisive of a question

not raised. The judgment of the court was not called for on any phase of the Vigilant-Watch Ordinance, and it is therefore patent that in those cases there can be no conflict with the opinion of the Court of Appeals bearing upon that subject. And this is equally true of all the other instructions cited by relator and reviewed by us as above.

As to the remaining case of Hovarka v. Transit Co., supra, a decision by Division One, relator asserts that the opinion of the Court of Appeals is in conflict therewith for the reason that "the opinion holds or seems to hold that any statement in an instruction, defining a motorman's duties under a Vigilant-Watch Ordinance, should be qualified by the use of the expression 'by the use of ordinary care,' " while the Hovarka Case holds "that a court would be justified in refusing an instruction asked, defining the motorman's duty not more explicitly than by the words 'ordinary care.' " The question made in the Hovarka Case, as suggested by counsel for respondents herein, related alone to the action of the trial court in striking out of two instructions the words "ordinary care" and inserting in lieu thereof the words "proper care." The entire discussion of VALLIANT, J., speaking for the court, revolved around this substitution, and his final determination was that "there was no error affecting the merits of the case to the injury of defendant in the modification in these instructions." Furthermore, under the particular facts in the Hovarka Case, it was expressly said that *"there was no room in the testimony of either the plaintiff or the defendant for a question of degree of care the motorman ought to have exercised. . . .* Between these two conflicting and utterly irreconcilable alleged conditions, what possible effect could it have on the verdict of the jury to instruct them on the degree of care the law required of the motorman?" (Italics ours). It is evident therefore that the question before us was not there considered. The Hovarka Case is accordingly nowise in point.

IV. I am unable to agree with the majority opinion where it holds that the opinion of the Court of Appeals

contravenes the case of Cytron v. Transit Co., 205 Mo. 692. This for two reasons, First, The Cytron Case does not pretend to discuss the degree of care required by the Vigilant-Watch Ordinance. This court there contented itself with merely approving an instruction attacked upon the ground that it submitted to the jury the proposition as to whether the motorman, by keeping a vigilant watch, could have seen the deceased and stopped the car and averted the collision, when there was no evidence, except that of the motorman himself, as to his ability to stop. The objection urged was not the degree of care required by the ordinance, but the insufficiency of the evidence as a predicate for the instruction (pages 695, 716). Second, The majority opinion seems to entirely overlook the fact that the instruction approved in the Cytron Case *embodied the words "by the exercise of ordinary care"* (page 716). Manifestly, therefore, the instruction is in harmony with the Sluder Case. This being true, and the Court of Appeals having followed the Sluder Case, the opinion of the Court of Appeals cannot be held to be out of harmony with the Cytron Case.

V. By the foregoing we have endeavored to demonstrate the lack of conflict between the cases cited and the opinion of the Court of Appeals. However, irrespective of the question of conflict, there remain the following insuperable barriers which militate against our sustaining relator's contentions, to-wit: That the Sluder Case is the last decision of this court in banc upon the degree of care required by the Vigilant-Watch Ordinance; that all of the foregoing decisions cited by relator, except the Sluder Case and the Cytron Case, are divisional opinions; and that under our ruling it became the duty of the Court of Appeals to follow the Sluder Case, which in our judgment it has done.

It follows that the writ herein was improvidently granted and should be quashed.

Accordingly, I very respectfully dissent from the majority opinion holding to the contrary.