## ILLINOIS TERMINAL R. CO. v. FELTROP.

### No. 12265.

Circuit Court of Appeals, Eighth Circuit.

Oct. 14, 1942.

Rehearing Denied Nov. 3, 1942.

Roscoe Anderson, of St. Louis, Mo. (Norman Bierman and Anderson, Gilbert, Wolfort, Allen & Bierman, all of St. Louis, Mo., on the brief), for appellant.

John W. Giesecke, of St. Louis, Mo. (Carl F. Wymore and Elliott M. Dampf, both of Jefferson City, Mo., on the brief), for appellee.

Before SANBORN, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

This is an action by Lena Feltrop, a widow, brought under § 3262, R.S.Mo.1929, Mo.R.S.A. § 3652, for damages for the death of her husband, Henry Feltrop, on January 17, 1940, as a result of being struck, negligently as claimed, by one of defendant's cars at or near the station on its elevated structure at North Market street and Broadway in the city of St. Louis. There was a verdict and judgment for the plaintiff from which the defendant appeals. Legal and timely exceptions were preserved in the trial court.

In the course of the trial the court, over defendant's objection, admitted in evidence § 2219 of the Revised Code of St. Louis 1936, known as the Vigilant Watch Ordinance. At the conclusion of the evidence the case was submitted to the jury solely on the humanitarian or last clear chance doctrine.

The humanitarian doctrine under Missouri law was included in the court's instruction to the jury in substantially the following language: "The specific charge of negligence made * * *, and the only one submitted, * * * is (1) that Henry Feltrop was in a position of imminent peril * * * [either oblivious to his danger or in a position] from which he could not extricate himself; (2) that it was defendant's duty to keep a vigilant watch for persons on its tracks; (3) that defendant either saw or, if exercising a vigilant watch, could or would have seen Henry Feltrop in a position of imminent peril in time thereafter, without danger of injury to the operators of the car or danger to the car, to have stopped the car or sufficiently slowed its progress to have avoided striking and injuring Mr. Feltrop; but (4) that defendant's agents negligently failed to do so and (5) such negligence was the direct cause of the injury."

This instruction is not challenged as an incorrect statement of the law of Missouri. The objection is that it is not warranted by the evidence. The humanitarian doctrine has frequently been applied by the Missouri courts, and the instruction is in harmony with the decisions of those courts. State ex rel. Vogt v. Reynolds, 295 Mo. 375, 244 S.W. 929; Grossman v. Wells, 314 Mo. 158, 282 S.W. 710.

In this court the defendant relies for reversal upon two propositions: (1) The court erred in admitting in evidence the Vigilant Watch Ordinance of St. Louis; and (2) the evidence was insufficient to warrant the submission of the case to the jury on the humanitarian doctrine.

The basis of defendant's first contention relates to the duty, if any, which it owed the deceased at the time of the collision resulting in his death. The court admitted in evidence the Vigilant Watch Ordinance and instructed the jury as set out heretofore, "that it was defendant's duty to keep a vigilant watch for persons on its tracks." The instruction is predicated upon § 2219 of the Revised Code of St. Louis 1936, reading:

"The following rules, regulations and provisions concerning the running and management of street railway cars shall be binding upon every person, corporation or

984

copartnership taking out license under the provisions of this article, or managing, controlling or operating street cars in the city of St. Louis: * * *

"Fourth, the conductor, motorman, gripman, driver, or any other person in charge of each car shall keep vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving toward it, and on the first appearance of danger to such person or vehicles, the car shall be stopped in the shortest time and space possible."

The ordinance has been sustained as a proper exercise of the police power of the city of St. Louis to control the use of its streets and public ways. State ex rel. Vogt v. Reynolds, supra; Toomey v. Wells, 310 Mo. 696, 276 S.W. 64.

The contention here is that the ordinance applies by its express terms to "street railways"; that a street railway within the meaning of the ordinance means a surface railway only; that defendant's line is not a street railway but an ordinary railroad; that defendant owns its right of way; that its tracks are not constructed upon the surface but upon an elevated trestle 35 feet above the street level; that it has a right to a clear track; that Feltrop was a trespasser; that there was no duty on the motorman to watch out and discover a person on the track; that his duty to exercise care for the protection of a trespasser arises only after he actually sees such person in a position of actual peril; that there is no proof of user; and that, therefore, the ordinance is not applicable, should not have been admitted in evidence, nor included in the instructions to the jury.

If defendant's line is a street railway, the court did not err either in admitting the ordinance in evidence or in instructing the jury as to defendant's duty, for "The ordinance by its terms applies the same degree of care uniformly throughout all parts of the city", and "It requires vigilance at all times and in all places." State ex rel. Vogt v. Reynolds, supra [295 Mo. 375, 244 S.W. 932].

The question of the status of the defendant is not open to debate on appeal. Plaintiff in her petition alleged that defendant's line is a street railway, and in its answer the defendant "admits that it * * * was engaged on the 17th day of January, 1940, * * * as a common carrier * * * and operating a street railway on elevated double tracks * * * in the City of St. Louis, Missouri."

The case was tried upon the theory that the line is a street railway. The objection to the admission of the ordinance was on the ground that it applies only to a surface line and not to an elevated track. The point that defendant's line is not a street railway was not raised in the pleadings, in the motion for a directed verdict nor in the motion for judgment notwithstanding the verdict. It cannot be raised for the first time in this court. The court did not err in admitting the ordinance in evidence nor instructing that it is applicable to the defendant.

The second proposition, that the evidence is insufficient to support a verdict resting solely on the humanitarian doctrine, is based upon the contentions (a) that the evidence is insufficient to support any other finding than that the motorman did not and could not see Feltrop as the car approached the place of the accident until it was within 50 feet of him, and the car could not then be stopped or slowed down in time to avoid striking him without danger to the car; and (b) that there is no evidence that Feltrop, prior to the time when the motorman actually saw him, was on the track ahead of the oncoming car in a position of imminent peril so that he could have been seen by the motorman.

To test these contentions a review of the pertinent evidence is required; and in passing upon its sufficiency the rule must be applied that the evidence and all reasonable inferences deducible therefrom must be considered in the light most favorable to the plaintiff. If there is a conflict in the evidence it must be resolved in favor of the finding of the jury. Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720; Lumbra v. United States, 290 U.S. 551, 553, 54 S.Ct. 272, 78 L.Ed. 492; Chesapeake & Ohio Railway Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983; Ætna Life Ins. Co. v. Newbern, 8 Cir., 127 F.2d 171, 173; Illinois Power & Light Corporation v. Hurley, 8 Cir., 49 F.2d 681, 686; Lowden et al. v. Burke, 8 Cir., 129 F.2d 767.

The law of Missouri is that "the vigilant watch ordinance requires the motorman to be prepared to stop his car at the first appearance of danger, within the shortest time and space possible. It requires the motorman to anticipate that those

approaching the track will come within the danger zone and that those within it will not seasonably leave it." State ex rel. Vogt v. Reynolds, supra. Ordinarily whether the motorman was keeping a vigilant watch and stopping his car as quickly as possible is a question for the jury. Esstman v. United Railways Co., Mo.Sup., 216 S.W. 526; Johnson v. Springfield Traction .Co., 176 Mo.App. 174, 161 S.W. 1193, 1197; Criss v. United Railways Co., 183 Mo.App. 392, 166 S.W. 834.

The defendant's railway starts from its terminal in St. Louis at Twelfth and Delmar streets and extends east and north across the Mississippi river to points in Illinois. At the point where Feltrop was killed there are double tracks elevated about 35 feet above the ground. On the west side of Broadway is a station on the elevated structure with two passenger loading platforms, each 110 feet in length, one on the north and the other on the south side of the tracks. The platforms are reached by separate stairways from the ground below. The two tracks are 40 inches apart. The railway approaches the platforms on a curve running in an easterly direction and crossing over Broadway just after passing the passenger loading platforms. Where the tracks pass over Broadway the spaces between the ties are filled and covered with concrete to prevent objects from falling through to the street below. The distance from the east end of the loading platform to the covered viaduct over Broadway is 31 feet.

Feltrop had left the home of a friend a few minutes prior to the accident, intending to board an east-bound car at the station to go to Granite City, Illinois. He left his friend about one block from the station and was not seen again by any witness until he was seen on the tracks at the time of the accident. The accident occurred at 7:25 o'clock on the morning of January 17, 1940, about six feet east of the end of the south platform, or about 25 feet west of the concrete viaduct over Broadway. The testimony in regard to the condition of the weather and of the rails is in conflict. There is evidence from which the jury could find that a light snow was falling but that the rails were dry. Cars passed over the tracks every ten or twelve minutes, and a policeman who examined the tracks within about ten minutes after the accident found them to be dry. The car which struck Feltrop was traveling toward the east on the south track at the rate of about 18 miles per hours.

The evidence showed that a street car moving at 18 miles an hour on a dry rail should be stopped in a distance of 62½ feet.

There is a conflict in the evidence as to the distance from the place where the motorman, as the car approached, could see the tracks running in front of the platform past the point where the accident occurred and on to the viaduct over Broadway. A witness who made measurements testified that "the whole thing is in full view from a point 275 feet or more west of the east end of the platform * * * all the way up to the concrete or filled-in grade by the other track." The jury was warranted in accepting this evidence as true.

The evidence is ambiguous in respect of the distance the car was from Feltrop when the motorman first saw him on the track ahead. The motorman was dead at the time of the trial, but a statement signed by him a short time after the accident occurred was introduced in evidence, the pertinent part of which statement reads:

"About 7:25 o'clock a.m., this date, east bound car #408 of the Illinois Terminal R. R. Co., turning in at Granite City, Illinois, over the High-Line at the rate of about 18 miles per hour, and when arriving at the south end of curve about one-hundred feet west of Broadway and North Market St., I blew whistle when I first saw a man. I was a distance of about fifty feet from him at the time he was on the outside of the east rail about six feet east of the front platform when the right side front of the car struck the man, knocking him off of the right-of-way; the man falling a distance of about thirty feet to the ice covered ground below, a distance of about thirty-five feet west of the building line where he was picked up.

"I ran the car about fifteen feet after striking the man. * * *"

The conductor was the only other eyewitness. He testified that he was sitting in the car just behind the motorman. He then proceeded: "And as we approached and rounded the curve on North Market Street I heard several short blasts of the whistle. Well, that was the danger signal, and I immediately jumped to my feet to see what it was. I seen a man running * * * toward the front of the car—on the ties— off of the concrete work over the Broadway sidewalk, * * * on the outbound track. * * * He was between the rails.

* * * As he was running toward the car, the car was moving towards him. * * * I raised to my feet. * * * The car at that particular time was over half of the length of the platform * * * about two-thirds of the length of the platform."

It is apparent that after the motorman saw Feltrop on the track he did all that he could do to avoid the accident. Feltrop was at that time evidently endeavoring to reach the platform. The crux of the case is not whether the motorman did actually see, but, "if exercising a vigilant watch, could or would have seen Henry Feltrop in a position of imminent peril in time thereafter * * * to have stopped the car or sufficiently slowed its progress to have avoided striking and injuring Mr. Feltrop." (Instruction of the court.) It is also apparent that had Feltrop been standing still at the point where he was struck as the car approached, he could have been seen for a distance of 275 feet plus 6 feet, or 281 feet, and since the car could have been stopped in 62½ feet, which is about the distance in which the motorman stated that he did stop it after seeing Feltrop ahead of him, the collision might have been avoided.

The contention of the defendant is that there is no evidence to justify a finding that Feltrop was on the track in a position of imminent peril before the motorman actually saw him, because no witness saw him from the time he left his friend a block away until the time when the motorman first saw him, and it was then too late to avoid striking him. It is suggested that Feltrop may have crossed the tracks from the platform at the north and suddenly appeared on the south track ahead of the on-coming car. The only alternative to this suggestion is that he came from the east in plain sight from the direction of the concrete viaduct over Broadway.

■ The verdict of the jury under the instructions rests upon a finding that Feltrop was running westward on the ties between the rails toward the loading platform for a sufficient distance to have been seen by the motorman in time to have avoided the accident either by stopping the car or by slowing its progress sufficiently to have given Feltrop time to reach the platform in safety. Such a finding is inferential, but we cannot say that it is an unreasonable inference. As stated supra, "the evidence and all reasonable inferences deducible therefrom must be considered in the light most favorable to the plaintiff." When the conductor first saw Feltrop he was running "off of the concrete work over the Broadway sidewalk * * * between the rails * * * toward the car." The motorman stated that he "was on the outside of the east rail about six feet east of the front platform when the right side front of the car struck him." This indicates that Feltrop was moving toward the platform from the east. Had he crossed the tracks from the north platform, as suggested by defendant, obviously he would have been moving in a southeasterly direction when he first appeared on the south track ahead of the car, and not in a westerly direction toward the approaching car. The facts in evidence, therefore, sustain the verdict of the jury.

■ The defendant contends further that there was no evidence to show that the accident could have been averted or prevented by slackening the speed of the car, and that it was therefore prejudicial error to instruct the jury on the failure to reduce its speed. To support this contention the defendant relies upon the case of Sevedge v. Kansas City, St. L. & Chicago R. Co., 331 Mo. 312, 53 S.W.2d 284. The present case differs substantially from the Sevedge case in that the undisputed facts here make it apparent that had the speed of the car been slackened only perceptibly after the motorman came in view of Feltrop the accident would have been averted. The motorman could have seen him for a distance of more than 200 feet, while the car could have been stopped in 62½ feet. A slight reduction in the speed of the car would have enabled Feltrop to cover the six feet between him and the platform. It was proper to submit the facts to the jury. Gann v. Chicago, R. I. & P. R. Co., 319 Mo. 214, 6 S.W.2d 39; State ex rel. Weddle v. Trimble, 331 Mo. 1, 52 S.W.2d 864.

It is immaterial when Feltrop got on the track, how he arrived there, or just where the car was at that time. The material question is whether he was on the track in a position of imminent peril in view of the motorman sufficiently long for the motorman to have stopped the car or to have slowed its progress enough to have avoided the injury. Under the evidence the question was properly submitted to the jury and its verdict cannot be set aside on this appeal.

The judgment is therefore affirmed.